**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DARBY DAY, individually and on behalf
of all others similarly situated,

               Plaintiff,

      v.

OPENLOOP HEALTH INC., TRIAD RX
BUYER LLC and TRIAD RX, INC.,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 1:25-cv-01418-GBW

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT, OR, IN THE
ALTERNATIVE, TO COMPEL ARBITRATION AND ENFORCE CLASS ACTION WAIVER**

Dated: January 29, 2026

**BLANK ROME LLP**

Adam V. Orlacchio (#5520)
James G. Gorman III (#6284)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
adam.orlacchio@blankrome.com
james.gorman@blankrome.com

Shannon E. McClure (*pro hac vice*)
One Logan Square, 130 N. 18th Street
Philadelphia, Pennsylvania 19103
Telephone: 215-569-5500
Facsimile: 215-569-5555
shannon.mcclure@blankrome.com

Rachael G. Pontikes (*pro hac vice*)
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone: (312) 776-2600
Facsimile: (312) 776-2601
rachael.pontikes@blankrome.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS ................................................. 1

II.   SUMMARY OF ARGUMENT ....................................................................... 1

III.  STATEMENT OF FACTS .............................................................................. 3

      A.   Plaintiff's Alleged Experience. ........................................................... 3

      B.   OpenLoop, Triad, and the Non-Party Websites. .............................. 4

IV.   ARGUMENT ................................................................................................... 5

      A.   The FDCA Governs FDA-Approved and Compounded Drugs. ....... 5

           1.   Compounding is a Lawful, Codified, and Long-Standing Practice. ........ 6

           2.   The FDCA Does Not Require Compounded Drugs to Undergo Safety and Efficacy Studies. ................................................................. 7

      B.   Each Relevant State Law Explicitly Authorizes Compounding. .................. 9

      C.   All of Plaintiff's Claims Are Preempted by § 337(a). ................................. 10

           1.   Plaintiff's State Law Claims Are Preempted. ......................................... 10

           2.   Plaintiff's RICO Claims Are Likewise Preempted. ............................... 13

      D.   Plaintiff Lacks RICO Standing. ................................................................... 14

           1.   Plaintiff Fails to Allege a RICO Injury. .................................................. 15

           2.   Plaintiff Fails to Allege Proximate Cause. ............................................. 16

      E.   Plaintiff Fails To Plead All Claims With the Requisite Particularity Under Fed. R. Civ. P. 9(b). ...................................................................... 17

           1.   All of Plaintiff's Fraud-Based Claims Are Subject to Rule 9(b). ........... 18

           2.   Plaintiff Does Not Adequately Plead That Any Particular Defendant Made the Alleged Fraudulent Representations. ...................................... 19

                a)   Website Statements. ......................................................................... 19

                b)   Impermissibly Lumping "Defendants" Together. ............................ 21

i

3.  Plaintiff Does Not Adequately Plead Falsity. ........................................ 22

a)  Plaintiff Has Not Sufficiently Alleged That Statements Concerning GLP-1s or the Telehealth Process Generally Were False. .................................. 23

b)  Plaintiff Has Not Sufficiently Alleged That the Website's Customer Testimonials are False. ..................................................... 24

c)  Plaintiff Did Not Sufficiently Alleged that Defendants Made False Statements About the Safety or Efficacy of Oral Tirzepatide. ........................... 24

(1)  Plaintiff's Lack of Substantiation Theory Fails. ...................................... 25

(2)  Plaintiff's Personal Experience and Selected Anecdotal Online Reviews Do Not Plausibly Establish Falsity. ........................................... 26

4.  Plaintiff Does Not Allege Reliance or Injury, and His Injuries Are Remote (Not Proximate). ................................................................................. 28

5.  North Carolina UDTPA Rejects Regulatory Disagreement Claims. .................... 31

6.  Plaintiff's RICO Claims Do Not Adequately Plead RICO Conduct, A Pattern of Racketeering Activity or A RICO Enterprise. ........................................ 32

7.  Plaintiff's RICO Conspiracy Claim under 1962(d) Fails. ........................... 34

F.  Several of Plaintiff's State Law Claims Are Fundamentally Flawed. ...................... 34

1.  Plaintiff Lacks Standing to Pursue Non-North Carolina State Law Claims. ......... 34

2.  Plaintiff Lacks Standing to Pursue Injunctive Relief. ............................... 35

3.  Plaintiff's South Carolina and Tennessee Consumer Protection Claims Fail. ....... 36

4.  Plaintiff's Unjust Enrichment Claim (Count V) Fails Because It Is Duplicative of His Deficient Fraud-Based Claims. .......................................... 37

G.  In the Alternative, This Court Should Compel Individual Arbitration. ..................... 37

V.  CONCLUSION ................................................................................... 40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accelerant Twister, LLC v. Marjo, LLC*,
  No. 22-1366, 2023 WL 4457422 (D. Del. July 11, 2023) .......................................22

*In re Actiq Sales & Mktg. Pracs. Litig.*,
  307 F.R.D. 150 (E.D. Pa. 2015) ..........................................................30, 31

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
  738 F.3d 1350 (Fed. Cir. 2013) ...................................................................11

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ....................................................................16, 31

*Argabright v. Rheem Mfg. Co.*,
  201 F. Supp. 3d 578 (D.N.J. 2016) ...........................................................24

*Arnold v. X Corp.*,
  No. 23-528, 2024 WL 4987032 (D. Del. Dec. 5, 2024) .......................................19

*Arthur Anderson LLP v. Carlisle*,
  556 U.S. 624 (2009) ...............................................................................39

*Bailey v. Johnson*,
  48 F.3d 965 (6th Cir. 1995) .....................................................................12

*In re Bayer Phillips Colon Health Probiotics Sales Pracs. Litig.*,
  No. 11-03017, 2017 WL 1395483 (D.N.J. Apr. 18, 2017)...................................26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................21

*Bennett v. Teva Pharm. USA, Inc.*,
  No. 19-2126, 2021 WL 797834 (D. Del. Mar. 2, 2021) .......................................12

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008)..................................................................................17

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006)................................................................7, 38

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001).........................................................................10, 13, 14

*Bumpers v. Cmty. Bank of N. Va.*,
   367 N.C. 81 (2013) ...................................................................................31

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)...................................................................38

*Caper Corp. v. Wells Fargo Bank, N.A.*,
   578 F. App'x 276 (4th Cir. 2014) ...........................................................28

*Carson v. HP Inc.*,
   750 F. Supp. 3d 376 (D. Del. 2024).............................................18, 29, 30

*Cavi v. Evolving Sys. NC, Inc.*,
   No. 15-1211, 2018 WL 2372673 (D. Del. May 24, 2018) ......................18

*Chaleplis v. Karloutsos*,
   579 F. Supp. 3d 685 (E.D. Pa. 2022) ......................................................22

*Colon v. Conchetta, Inc.*,
   No. 17-0959, 2017 WL 2572517 (E.D. Pa. June 14, 2017)....................39

*Cross v. Ciox Health, LLC*,
   438 F. Supp. 3d 572 (E.D.N.C. 2020)......................................................28

*Dalton v. Camp*,
   353 N.C. 647 (2001) ...............................................................................31

*Dewey v. Volkswagen AG*,
   558 F. Supp. 2d 505 (D.N.J. 2008) .........................................................29

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
   784 F. Supp. 2d 508 (D.N.J. 2011) ............................................16, 17, 34

*Dockery v. Heretick*,
   No. 17-4114, 2021 WL 3931858 (E.D. Pa. Sept. 1, 2021),
   *aff'd*, 2022 WL 14810015 (3d Cir. Oct. 26, 2022) ...............................17

*Doe 9 v. Varsity Brands, LLC*,
   No. 22-3509, 2023 WL 4113198 (D.S.C. June 21, 2023) .......................29

*Dzielak v. Whirlpool Corp.*,
   26 F. Supp. 3d 304 (D.N.J. 2014) ...........................................................28

*In re Effexor Antitrust Litig.*,
   357 F. Supp. 3d 363 (D.N.J. 2018) .........................................................36

*Eli Lilly & Co. v. Adonis Health, Inc.*,
   No. 25-03536, 2025 WL 2721684 (N.D. Cal. Sept. 24, 2025)......................6, 25, 26

*Fink v. Time Warner Cable*,
 810 F. Supp. 2d 633 (S.D.N.Y. 2011)........................................................................24

*In re Fragrance Direct Purchaser Antitrust Litig.*,
 No. 23-02174, 2025 WL 579639 (D.N.J. Feb. 21, 2025) ...........................................36

*Frompovicz v. Niagara Bottling, LLC*,
 337 F. Supp. 3d 498 (E.D. Pa. 2018) .........................................................................12

*Gahagan v. Penn Abstract & Land Servs., LLC*,
 No. 24-1921, 2025 WL 1647730 (M.D. Pa. June 9, 2025)..........................................37

*Garner v. Glob. Plasma Sols. Inc.*,
 590 F. Supp. 3d 738 (D. Del. 2022)............................................................................24

*In re Generic Pharms. Pricing Antitrust Litig.*,
 368 F. Supp. 3d 814 (E.D. Pa. 2019) .........................................................................36

*In re Gerber Probiotic Sales Pracs. Litig.*,
 No. 12-cv-835, 2013 WL 4517994 (D.N.J. Aug. 23, 2013) ........................................26

*Gilmour v. Bohmueller*,
 No. 04-2535, 2005 WL 241181 (E.D. Pa. Jan. 27, 2005)...........................................33

*Gray v. Bayer*,
 No. 08-4716, 2009 WL 1617930 (D.N.J. June 9, 2009)........................................29, 30

*Greenwald Caterers Inc. v. Lancaster Host, LLC*,
 599 F. Supp. 3d 235 (E.D. Pa. 2022) .........................................................................37

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
 716 F.3d 764 (3d Cir. 2013)........................................................................................40

*Holmes v. Securities Investor Protection Corp.*,
 503 U.S. 258, 268 (1992).............................................................................16, 17, 31

*In re Ins. Brokerage Antitrust Litig.*,
 618 F.3d 300 (3d Cir. 2010)........................................................................................34

*Intron/Temodar Consumer Class Action*, No. 06-5774, 2009 WL 2043604, *13
 (D.N.J. July 10, 2009)...........................................................................................15, 16

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab.
 Litig.*,
 903 F.3d 278 (3d Cir. 2018)........................................................................................36

*Kenney v. Healey Ford-Lincoln-Mercury, Inc.*,
 730 A.2d 115 (1999)...................................................................................................29

*Klein v. Gen. Nutrition Cos., Inc.*,
  186 F.3d 338 (3d Cir. 1999)..............................................................................19

*Kussy v. Home Depot U.S.A. Inc.*,
  No. 06-12899, 2006 WL 3447146 (E.D. Mich. Nov. 28, 2006)............................................28

*LabMD Inc. v. Boback*,
  47 F.4th 164 (3d Cir. 2022) ..............................................................................32

*Land v. Dixon*,
  No. 2004-03019, 2005 WL 1618743 (Tenn. App. July 12, 2005)........................................29

*In re Lipitor Antitrust Litig.*,
  336 F. Supp. 3d 395 (D.N.J. 2018) ......................................................................37

*Livingston v. Shore Slurry Seal, Inc.*,
  98 F. Supp. 2d 594 (D.N.J. 2000) ......................................................................33

*Lum v. Bank of Am.*,
  361 F.3d 217 (3d Cir. 2004)..............................................................22, 32, 33, 34

*Maio v. Aetna, Inc.*,
  221 F.3d 472 (3d Cir. 2000)..............................................................................15

*Maugain v. FCA US LLC*,
  No. 22-116, 2023 WL 1796113 (D. Del. Feb. 7, 2023)..................................................35

*McNair v. Synapse Grp. Inc.*,
  672 F.3d 213 (3d Cir. 2012)..............................................................................36

*MDNet, Inc. v. Pharmacia Corp.*,
  147 F. App'x 239 (3d Cir. 2005) ......................................................................22

*Med. Ctr. Pharmacy v. Mukasey*,
  536 F.3d 383 (5th Cir. 2008) ............................................................................6

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
  623 F.3d 1200 (8th Cir. 2010) ..........................................................................12

*Minnick v. Clearwire US, LLC*,
  683 F. Supp. 2d 1179 (W.D. Wash. 2010)..............................................................29

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
  812 F.3d 294 (3d Cir. 2016)..............................................................................18

*Morris v. PLIVA, Inc.*,
  713 F. 3d 774 (5th Cir. 2013) ..........................................................................11

*Neale v. Volvo Cars of N. Am., LLC*,
    794 F.3d 353 (3d Cir. 2015)..................................................................35

*Nelson v. Claussen*,
    No. 23-01896, 2024 WL 4249730 (D.N.J. Sept. 20, 2024)....................33

*Newtechbio Inc. v. Septicleanse, Inc.*,
    No. 12-5882, 2014 WL 6667889 (D.N.J. Nov. 24, 2014) ......................34

*Oliveira v. Amoco Oil Co.*,
    776 N.E.2d 151 (Ill. 2002) ....................................................................29

*In re Orthopedic Bone Screws Prods. Liab. Litig.*,
    193 F.3d 781 (3d Cir. 1999)............................................................10, 11

*Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*,
    710 F. Supp. 2d 458 (D. Del. 2010).......................................................29

*Painaway Australia Pty Ltd. ACN 151 146 977 v. MaxRelief USA, Inc.*,
    No. 18-3854, 2022 WL 1028024 (E.D. Pa. Apr. 6, 2022).......................24

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)...................................................................7

*Perez v. Nidek Co., Ltd.*,
    711 F.3d 1109 (9th Cir. 2013) ................................................................11

*Rait v. Sears, Roebuck & Co.*,
    No. 08-2461, 2009 WL 2488155 (D.N.J. Aug. 11, 2009) ......................28

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)................................................................................34

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
    62 P.3d 142 (Colo. 2003) .......................................................................29

*Rowe v. Metabolife Int'l, Inc.*,
    No. 03-4346, 2004 WL 292475 (E.D. Pa. Jan. 20, 2004).......................22

*Scanlon v. Medtronic Sofamor Danek USA Inc.*,
    61 F. Supp. 3d 403 (D. Del. 2014).................................................11, 13

*Scheuerman v. Nestle Healthcare Nutrition, Inc.*,
    No. 10-3684, 2012 WL 2916827 (D.N.J. July 17, 2012) .......................26

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)................................................................................16

*State Farm Mut. Auto. Ins. Co. v. Ficchi*,
    No. 10-555, 2011 WL 2313203 (E.D. Pa. June 13, 2011)......................................................23

*Thompson v. Western States Med. Ctr.*,
    535 U.S. 357 (2002)...........................................................................................................6, 7, 8

*Tobin v. Samsung Elecs. Am., Inc.*,
    No. 18-12473, 2019 WL 1399557 (D.N.J. Mar. 27, 2019) ..................................................28

*Tristan v. Bank of Am.*,
    No. 22-00183, 2023 WL 4417271 (C.D. Cal. June 28, 2023)...............................................24

*Warden v. McLelland*,
    288 F.3d 105 (3d Cir.2002).............................................................................................19, 32

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009)...........................................................................................35

*Wellness Pharma., Inc. v. Becerra*,
    No. 20-3082, 2021 WL 4284567 (D.D.C. Sept. 21, 2021) .....................................................7

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*,
    No. 2037-N, 2006 WL 2473665 (Del. Ch. Aug. 22, 2006) .............................................39, 40

*Zakheim v. Curb Mobility LLC*,
    No. 22-4594, 2023 WL 5339606 (E.D. Pa. Aug. 18, 2023) ..................................................34

*Zellner v. Monroe Cnty. Mun. Waste Mgmt. Auth.*,
    No. 07-1976, 2008 WL 2962595 (M.D. Pa. July 28, 2008) ..................................................33

*Zimmerman v. HBO Affiliate Grp.*,
    834 F.2d 1163 (3d Cir. 1987)...............................................................................................16

**Federal Statutes and Regulations**

18 U.S.C.
    § 1961(1).............................................................................................................................32
    § 1962.............................................................................................................................15, 32
    § 1962(c)............................................................................................................................3, 34
    § 1962(d).........................................................................................................................3, 4, 34

21 U.S.C.
    § 337(a) ...................................................................................10, 11, 12, 14
    § 352(bb) ............................................................................................................7
    § 353a ................................................................................................................6
    § 353a(a) ............................................................................................................8
    § 353a(a)(2)(A) ..................................................................................................8
    § 353a(a)(2)(B) ..................................................................................................8
    § 353a(b)(1)(A)(II) ............................................................................................8
    § 355(a) ..........................................................................................................5, 6

42 C.F.R. § 410.78 ....................................................................................4, 10

## State Statues, Codes, and Regulations

Cal. Bus. & Prof. Code § 4126 .................................................................9

Cal. Code Regs. 16 § 1735.2 ....................................................................9

Colo. Rev. Stat. § 12-280-101 ..................................................................9

Conn. Agencies Regs. § 20-576-1 ............................................................9

Conn. Gen. Stat. § 20 570 ........................................................................9

FDCA § 503A .............................................................................................6

Fla. Stat.
    § 465.001 .........................................................................................10
    § 501.211(2) ....................................................................................29

Ill. Admin. Code 68 § 1330 ....................................................................10

Mo. Rev. Stat. § 407.025 .........................................................................29

N.C. Admin Code § 46.1200 ...............................................................9, 10

N.C. Gen. Stat.
    § 90-1 ...............................................................................................30
    § 90-1.1(5)(b) ..................................................................................30
    § 90-85.2 ...........................................................................................9
    § 90-85.2 .........................................................................................10

N.M. Stat. § 57-12-10(b) .........................................................................29

S.C. Code Ann. § 39-5-140 ......................................................................36

Tenn. Code § 47-18-109 ..........................................................................36

**Federal Rules**

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6).............................................................................................37, 38, 40

Fed. R. Civ. P. 56.....................................................................................................................40

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff sued OpenLoop Health Inc. ("OpenLoop"), Triad Rx Inc., and Triad Rx Buyer LLC (collectively "Triad") on November 20, 2025. D.I. 1 ¶¶ 10-12, 19, 59-64. Pursuant to this Court's Order dated December 10, 2025, approving the parties' Joint Stipulation, D.I. 12, Defendants now move to dismiss all of Plaintiffs' claims.

## II.    SUMMARY OF ARGUMENT

This case attempts to turn dissatisfaction with a prescription weight-loss treatment into a federal RICO action and a multi-state consumer fraud case. Plaintiff previously took an injectable GLP-1[1] for weight loss. He then visited a website operated by non-party medvi.org ("MEDVi"), and was prescribed an ***oral*** version of tirzepatide, combined with L-Carnitine and Vitamin B-12. He claims he took the oral version of the drug for "more than a week," but experienced "no physiological effects." Dissatisfied, he abandoned the drug, canceled his subscription, and sued.

Plaintiff's 82-page, six-count lawsuit is based largely on sweeping allegations about the GLP-1 market, the alleged science of oral peptide delivery, online reviews, and Reddit posts. The Complaint asserts two separate federal Racketeer Influenced and Corrupt Organizations Act ("RICO") counts; a claim for violation of the North Carolina Unfair & Deceptive Trade Practices Act; common law fraud and unjust enrichment claims; and—in a final grand flourish—a count asserting violations of 13 separate state consumer protection laws. The core of Plaintiff's Complaint is that it is "pharmacologically impossible" to make an oral version of tirzepatide that works. As "proof," Plaintiff offers the fact that Eli Lilly, the manufacturer of FDA-approved

---

[1] Drugs in the GLP-1 (glucagon like peptide 1) class are commonly prescribed to treat diabetes, sleep apnea, and obesity. Tirzepatide is the main ingredient in Eli Lilly's Mounjaro® and Zepbound®, and semaglutide is the main ingredient in Novo Nordisk's Ozempic® and Wegovy®. Compounding pharmacies make compounded versions of tirzepatide and semaglutide, in multiple forms, subject to federal and state compounding requirements.

Mounjaro® and Zepbound® injectable tirzepatide brands, has not sought FDA approval for any oral version of tirzepatide. Thus, he concludes that oral tirzepatide is "snake oil," and any entity that markets, dispenses, or distributes oral tirzepatide must be engaging in fraud.

Plaintiff sued OpenLoop (the back-end telehealth service provider for MEDVi's website),[2] as well as Triad (pharmacies listed on the prescription label). Plaintiff speculates that OpenLoop serves as the operational backbone of a nationwide scheme of entities promoting and selling oral tirzepatide, partnering with pharmacies like Triad; clinicians prescribing oral tirzepatide; and "numerous consumer-facing websites and brands" that conspire to market and sell oral tirzepatide. Plaintiff alleges that Defendants are responsible for the uniform marketing and distribution of an ***unapproved*** (meaning unapproved by FDA) and pharmacologically ineffective drug.

While Complaint is voluminous, its sheer length cannot cure its substantive shortcomings. At its core, the Complaint rests on a single, erroneous premise: that compounded oral tirzepatide requires FDA approval, and without FDA approval, pharmacies are prohibited from lawfully compounding or dispensing it. Plaintiff's Complaint should be dismissed for the following reasons:

1.    Compounding is lawful under federal law and the laws of every state included in Plaintiff's Complaint (indeed, every state in the country). No federal or state law requires FDA approval for compounding oral tirzepatide; in fact, federal and state law explicitly permit it. Plaintiff's theory that Defendants committed fraud because FDA has not approved compounded oral tirzepatide is legally flawed and cannot support any cause of action.

2.    The FDCA preempts all of Plaintiff's claims. The FDCA has no private right of action, and Congress vested exclusive enforcement authority in the federal government. Plaintiff cannot circumvent that statutory structure by recasting alleged FDCA violations as state law or

---

[2] Allegations about other telehealth websites Plaintiff never visited are irrelevant. D.I. ¶¶ 20-32.

RICO claims. State law claims which are veiled attempts to enforce the FDCA are preempted.

3.      Plaintiff lacks RICO standing, as he has not alleged RICO injury. He does not plausibly claim that he paid for a product that provided no value and fails to plead proximate cause.

4.      All of Plaintiff's claims sound in fraud, but fail Fed. R. Civ. P. 9(b). The Complaint does not identify who made the "fraudulent" statements, and does not adequately allege falsity, reliance, proximate cause, or injury. North Carolina UDTPA bars claims based on regulatory disagreement. For the RICO claims, Plaintiff likewise fails to plead the alleged predicate offenses—mail and wire fraud—with the required specificity, and does not adequately plead RICO conduct, a pattern of racketeering activity, or a RICO enterprise. Because Plaintiff's RICO claim under §1962(c) fails, the RICO conspiracy claim under § 1962(d) claim necessarily fails as well.

5.      Plaintiff lacks Article III standing to assert the consumer protection claims under the laws of 13 states where he does not reside.

6.      Plaintiff lacks standing to seek injunctive relief because he concedes there is no likelihood of future injury:  he stopped taking oral tirzepatide and cancelled his subscription.

7.      Plaintiff cannot pursue class claims under the consumer protection laws of South Carolina and Tennessee, which do not permit private plaintiffs to bring class actions.

8.      Because Plaintiff's fraud claims fail, his duplicative unjust enrichment claim fails.

9.      In the alternative, Plaintiff is equitably estopped from denying that his claims against Defendants are covered by the MEDVi User Agreement, and on that basis all of his claims must be sent to individual (not class-wide) arbitration.

## III.    STATEMENT OF FACTS

### A.    Plaintiff's Alleged Experience.

On October 18, 2025, Plaintiff accessed MEDVi's telehealth website, a third-party entity

not named in this lawsuit. D.I. 1 ¶ 82.[3] Plaintiff alleges he completed an electronic medical questionnaire and provided information regarding his medical history, height, and weight. *Id.* ¶¶ 82-88. Plaintiff requested that he be considered for an oral compounded GLP-1. *Id.* ¶ 87. Plaintiff noted he previously used an injectable GLP-1 weight loss medication. *Id.* ¶ 91.

Based on the information Plaintiff submitted, Plaintiff was prescribed compounded oral tirzepatide. *Id.* ¶ 89. Plaintiff alleges that he never spoke with, video-conferenced with, or consulted with a licensed medical professional before or after submitting payment. *Id.* ¶ 86. Plaintiff's experience is consistent with an asynchronous telehealth model, in which a patient submits medical information through an online platform and a licensed provider later reviews that information, exercises independent medical judgment to determine whether the patient is an appropriate candidate for a particular treatment, and if clinically indicated, issues a prescription.[4]

Plaintiff received a 30-day supply of oral tirzepatide combined with L-Carnitine and Vitamin B-12, compounded and dispensed by Triad. D.I. 1 ¶ 89. The prescribing instructions listed on the bottle were to dissolve ½ a tablet under the tongue once daily for 14 days, and thereafter a full tablet daily. *Id.* Plaintiff claims he "took the medication as directed for more than a week but experienced no physiological effects, and thus cancelled his subscription." *Id.* ¶¶ 91-92. By Plaintiff's own admission, he did not complete the first 14 days of treatment. *Id.*

B.    **OpenLoop, Triad, and the Non-Party Websites.**

OpenLoop, a Delaware corporation, provides operational and technology services to telehealth organizations. OpenLoop's services include back-end infrastructure like software and

---

[3] Throughout, unless otherwise indicated, emphasis is added, citations and internal quotation marks are omitted, and quotations are cleaned up for readability.

[4] Asynchronous models are often permitted explicitly by statute. *See, e.g.*, 42 C.F.R. § 410.78 (defining "asynchronous store-and-forward technologies" as those allowing providers to review a patient's medical information without the patient being present, and make treatment and prescribing decisions based on that review).

administrative support, enabling independent telehealth companies to connect patients with licensed clinicians. *Id.* ¶¶ 10, 16-18. The Complaint does not assert that OpenLoop owns MEDVi or any other consumer-facing website through which plaintiff purchased oral tirzepatide. Nor does the Complaint allege that OpenLoop set pricing, dictated treatment protocols, or controlled prescribing decisions. *Id.* ¶¶ 59-65. Plaintiff's prescription listed Triad as the pharmacy. *Id.* ¶ 89.

The Complaint does not allege that any prescriber ever saw or relied on the challenged marketing statements. It does not assert that any Defendant misrepresented that compounded oral tirzepatide was FDA approved, or that prescribers lack independent medical judgment in prescribing oral tirzepatide. The Complaint does not identify any alleged Triad-operated consumer-facing websites or quote any supposed Triad-authored consumer marketing statement.

Finally, Plaintiff attributes the challenged consumer-facing statements to non-party websites that market weight-loss services, present information about GLP-1 therapies, facilitate telehealth consultations, and coordinating fulfillment through licensed pharmacies. *Id.* ¶¶ 19-32.

## IV. <u>ARGUMENT</u>

### A. <u>The FDCA Governs FDA-Approved and Compounded Drugs.</u>

Plaintiff fundamentally mischaracterizes the drug he was prescribed. Plaintiff was not prescribed an FDA-approved drug. Instead, he was prescribed a compounded drug prepared by a licensed pharmacy. Reflecting Congress's deliberate decision to treat FDA-approved drugs and compounded drugs as distinct categories, federal law treats these two categories as legally distinct, subject to different regulatory requirements, and evaluated under different statutory standards. Both categories are entirely legal. Drug manufacturers must obtain FDA approval through the new drug application process before marketing a new drug. 21 U.S.C. § 355(a). Pharmacies may

lawfully compound without FDA approval, so long as they meet FDCA § 503A's criteria.[5]

1.    Compounding is a Lawful, Codified, and Long-Standing Practice.

Drug compounding is a traditional component of the practice of pharmacy involving "a process by which a pharmacist or doctor combines, mixes, or alters ingredients to create a medication tailored to the needs of an individual patient." *Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 360-361 (2002). Compounding occurs when a physician determines a manufactured drug is inappropriate or unavailable to treat a patient. *Id.* at 361. "Compounding pharmacies combine different drugs to create bespoke concoctions," and when "FDA-approved medications unsuitable, compounded drugs are a godsend." *Eli Lilly & Co. v. Strive Pharm., LLC*, No. 25-401, 2025 WL 2851658, *1 (D. Del. Oct. 8, 2025) (Bibas, J.).

In 1938, Congress enacted the federal Food, Drug and Cosmetic Act ("FDCA"), which left compounding oversight to the states. *Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 388 (5th Cir. 2008). Under the FDCA, drugs manufactured, distributed, and marketed in the United States are subject to FDA's approval process, providing that "no person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed [with FDA] … is effective with respect to such drug." *Western States*, 535 U.S. 357, 361 (2002) (quoting 21 U.S.C. § 355(a)).

As compounding expanded, "Congress promulgated the Food and Drug Administration Modernization Act of 1997 ("FDAMA"), which amended the FDCA to add § 503A, creating a federal oversight and regulation overlay for compounding pharmacies. 21 U.S.C. § 353a. Section 503A contained new compounding parameters, including strict limits on the types of active

---

[5] 21 U.S.C. §355(a) is the formal codification of "§ 505," the section number to which it was assigned in the FDCA; "§ 505" serves as the common shorthand reference. Similarly, "§ 503A" is the oft-used shorthand reference for the statute codified at 21 U.S.C. § 353a.

pharmaceutical ingredients ("API") that may be used in compounded drugs and banning compounders from advertising. In 2002, the Supreme Court struck down the advertising ban, invalidating the entire statute and returning the regulation of compounding pharmacies to the states. *Western States*, 535 U.S. at 377. In 2013, Congress passed the Drug Quality and Security Act ("DQSA"), which revived § 503A except for the unconstitutional advertising ban. *Wellness Pharma., Inc. v. Becerra*, No. 20-3082, 2021 WL 4284567, *4 (D.D.C. Sept. 21, 2021). Replacing that ban, DQSA now included a prohibition against "the advertising or promotion of a compounded drug [if it] is false or misleading in any particular." 21 U.S.C. § 352(bb).

In passing the DQSA, Congress's intent was to maintain patient access to quality compounded drugs because drug compounding plays a critical role in patient care.[6] DQSA's purposes were to provide uniformity in the regulation of compounders, avoid the prior piecemeal approach to regulation, and maintain continued access to compounded drugs.[7] From DQSA's passage through to today, FDA has not promulgated any regulations or guidance regarding parameters for advertising compounded drugs.

    2.    <u>The FDCA Does Not Require Compounded Drugs to Undergo Safety and Efficacy Studies.</u>

To preserve access to compounded drugs, Section 503A purposely and expressly exempts compounded drugs from FDA's new drug approval process, including clinical trials, recognizing that "[r]equiring FDA approval of all [compounded] drug products … would, as a practical matter,

---

[6] *E.g.*, 159 CONG. REC. S8071 (daily ed. Nov. 18, 2013) (Sens. Alexander & Harkin) (recognizing need for patient access to compounded drugs).

[7] FDA, *Guidance for Industry: Prescription Requirement Under Section 503A of the Federal Food, Drug, and Cosmetic Act*, at 6 (Dec. 2016) (Declaration of James Gorman Ex. A) ("Gorman Decl.") ("Prescription Guidance"). This Court may take judicial notice of FDA materials, and may consider judicially-noticed materials in ruling on 12(b)(6) motions. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993)*; Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

eliminate the practice of compounding." *Western States*, 535 U.S. at 369. Congress created compounding parameters to accompany this exemption. Compounding is tied to patient prescriptions to ensure that a doctor has determined that the compounded drug is necessary for patient treatment. 21 U.S.C. § 353a(a)(2)(A)–(B).

Somewhat bizarrely for a consumer protection complaint, Plaintiff devotes dozens of paragraphs to articulating the challenges facing multi-billion-dollar large pharmaceutical manufacturers seeking to develop commercial, FDA approved drugs, including oral GLP-1s, including that FDA requires these pharmaceutical manufacturers to present evidence of (expensive) clinical studies supporting drug safety and efficacy. D.I. 1 ¶¶ 37-57. But per Congressional statute and by purposeful design, *Western States*, 535 U.S. at 369, compounded drugs are not required to undergo clinical studies or obtain FDA approval. The FDCA allows a physician to prescribe, and a pharmacy to compound, tirzepatide in oral form after a prescriber determines it is appropriate.[8] Moreover, a pharmacy cannot control therapeutic outcomes—a prescriber determines clinical appropriateness, and the patient's individual physiology governs effect. Section 503A does not require a compounding pharmacy to prove efficacy, or match the outcomes of FDA-approved drugs.[9] Where a prescriber determines that a compounded drug is appropriate, the pharmacy compounds the drug according to the prescriber's prescription

_____

[8] 21 U.S.C. § 353a(b)(1)(A)(II) (permitting pharmacies to compound with active pharmaceutical ingredients, like tirzepatide, which are components of an FDA-approved drug); FDA, *Guidance for Industry: Compounded Drugs that Are Essentially Copies of a Commercially Available Drug Product Under Section 503A of the Federal Food, Drug, and Cosmetic Act*, at 5-8 (Jan. 2018) (Gorman Decl. Ex. B) (a compounded drugs can use different routes of administration (oral versus injectable), different dosage strengths, and contain additional ingredients from FDA-approved drug) (*see supra* note 7 regarding judicial notice of FDA materials).
[9] 21 U.S.C. § 353a(a) (exempting compounded drugs from FDCA's new drug approval). FDA-approved injectable forms of tirzepatide do not contain L-Carnitine or Vitamin B-12.

(including route of administration, *i.e.*, oral or injectable) and dispenses it.[10]

### B.    Each Relevant State Law Explicitly Authorizes Compounding.

The majority of Plaintiff's claims rely on the same flawed premise: Defendants unlawfully sold "unapproved drugs" (meaning "unapproved ***by FDA***"), violating state law. *See* D.I. 1, Counts III-VI. Plaintiff alleges, incorrectly, that Defendants were required to but did not obtain FDA approval prior to dispensing compounded tirzepatide/L-cartinine/vitamin B12 oral tablets into the referenced states. D.I. 1 ¶ 212. But Plaintiff purposely misrepresents the law in each of these states and at the federal level, improperly trying to recast alleged FDA regulatory violations as consumer fraud state law claims. Contrary to Plaintiff's claims, ***not a single state*** referenced in Plaintiff's Complaint requires compounded drugs to undergo FDA new drug approval before they may be dispensed to patients. D.I. 1 ¶ 212. Rather, both federal and state law expressly ***permit*** compounded pharmacies to dispense compounded drugs.

For instance, North Carolina—the only state with laws relevant to Plaintiff, a North Carolina resident—regulates compounded drugs dispensed into North Carolina via the North Carolina Board of Pharmacy.[11] Consistent with FDCA and federal law generally, nothing in North Carolina's statutory or regulatory scheme requires that compounded drugs undergo FDA new drug approval before being dispensed within North Carolina. Indeed, ***every*** state and territory in the United States has a regulatory framework permitting licensed pharmacies, like Triad, to compound and dispense drugs.[12] Thus, Plaintiff's theory that compounded oral tirzepatide required FDA "new

---

[10] Prescription Guidance, *supra* note 7.

[11] *See generally* N.C. Gen. Stat. § 90-85.2 *et seq.* (regulating practice of pharmacy and authorizing licensed pharmacies, including nonresident ones, to compound and dispense drugs pursuant to valid prescriptions); 21 N.C. Admin. Code 46.1200 *et seq.* (establishing standards for compounding and dispensing prescription drugs to North Carolina patients).

[12] Compounding is expressly permitted in every state at issue. Cal. Bus. & Prof. Code § 4126 et seq.; Cal. Code Regs. tit. 16, § 1735.2 et seq; Colo. Rev. Stat. § 12-280-101 et seq; Colo. Code Regs. § 719-1 et seq.; Conn. Gen. Stat. § 20 570 et seq.; Conn. Agencies Regs. § 20-576-1 et

drug" premarket approval is fundamentally flawed and legally incorrect; the federal and state regulatory structure governing compounding confirms the opposite.

### C.    <u>All of Plaintiff's Claims Are Preempted by § 337(a).</u>

#### 1.    <u>Plaintiff's State Law Claims Are Preempted.</u>

Congress vested exclusive authority to enforce the FDCA in the federal government. Section 337(a) states: "all such proceedings for the enforcement … of this chapter [i.e., the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a). The Supreme Court has confirmed that the FDCA is "enforced exclusively by the Federal Government," and state law claims that exist solely by virtue of FDCA requirements are impliedly preempted. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352 (2001). In *Buckman*, the Supreme Court confirmed that Congress intended the FDCA to be "enforced exclusively by the Federal Government," and therefore state law claims that exist solely by virtue of FDCA requirements are impliedly preempted. *Id.* Notwithstanding § 337(a)'s clear prohibition against non-federal enforcement, Plaintiff's state law claims each seek to enforce § 503A of FDCA.

Consistent with *Buckman*, the Third Circuit applies the same principle: there is no private right of action to enforce the FDCA, but truly independent state law claims (*i.e.*, claims that would exist even if the FDCA had never been enacted) can proceed. *In re Orthopedic Bone Screws Prods. Liab. Litig.*, 193 F.3d 781, 790–91 (3d Cir. 1999) (holding that independent state law claims are only viable if the claims are based on a separate underlying cause of action that previously existed under state law). To avoid federal preemption, there is a "narrow path that plaintiffs must follow

---

seq.; Fla. Stat. § 465.001 et seq.; Fla. Admin. Code Ann. r. 64B16-27.100 et seq.; 225 ILCS 85/2 et seq.; Ill. Admin. Code tit. 68, § 1330 et seq.; MCL § 333.17748 et seq.; Mich. Admin. Code R. 338.531 et seq.; N.C. Gen. Stat. §90-85.2 et seq.; N.C. Admin. Code 46.1200 et seq.; N.M. Stat. Ann. § 61-11-6 et seq.; N.M. Admin. Code § 16.19.30 et seq.; Tenn. Code Ann. § 63-10-204 et seq.; Tenn. Comp. R. & Regs. 1140-03-.01 et seq.; Wash. Rev. Code § 18.64.011 et seq.; Wash. Rev. Code § 18.64.011 et seq.; Wash. Admin. Code § 246-945-100 et seq.

to successfully assert state-law claims"—Plaintiff's state law claim must parallel federal requirements, but not ***depend*** on those federal requirements. *Scanlon v. Medtronic Sofamor Danek USA Inc.*, 61 F. Supp. 3d 403, 411 (D. Del. 2014). There must, therefore, ***exist*** a state law corollary allowing for plaintiff's claim to be resolved on state law grounds alone, such that the state law claim exists even if the FDCA had never been enacted. *Id.* (holding that "such claims must be premised on conduct that both (1) violates the FDCA and (2) would rise to a recovery under state law even in the absence of the FDCA").

Here, Plaintiff cannot meet that standard. The Complaint's state law claims (whether statutory or common law) are entirely dependent upon proving noncompliance with § 503A of the FDCA; they cannot be proven in the FDCA's absence.[13] Plaintiff admits the state statutes matter only if the compounded drug falls outside of § 503A of the FDCA, which would thereby make the compounded drugs at issue "unapproved drugs." D.I. 1 ¶ 223 (asserting that Defendants cannot invoke § 503A because Defendants allegedly ***violated*** § 503A because the compounded drugs were allegedly "mass produced" and "not compounded in response to an individualized prescription"). Plaintiff's concession that its claims turn on § 503A compliance are exactly the kind of claims preempted by § 337(a).[14] Accordingly, Plaintiff's state law claims (Counts III-VI) require the

---

[13] *See*, *e.g.*, D.I. 1 ¶¶ 174–89 (Count III asserts NCUDTPA liability based on alleged sale of an "unapproved" compounded drug only after declaring the products violate § 505's federal approval scheme and are not exempt under § 503A); ¶¶ 190–200 (Count IV, common law fraud tied to "safe," "effective," and "doctor-supervised" assertions); ¶¶ 201–10 (Count V, "unjust" because product is an "unapproved and ineffective drug"); and ¶¶ 211–24 (Count VI, "multistate" claims seeking to bootstrap FDA new drug approval concepts into state consumer-protection statutes through *per se* violations).

[14] *See*, *e.g.*, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 791 (3d Cir. 1999) (FDCA "creates no private cause of action and, in fact, expressly restricts its enforcement to the federal government."); *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1359 (Fed. Cir. 2013) ("The FDA—and the FDA alone—has the power and the discretion to enforce the FDCA."); *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013) ("[P]rivate enforcement of the statute is barred …."); *Morris v. PLIVA, Inc.,* 713 F. 3d 774, 778 (5th Cir. 2013) ("The [FDCA] provides

Court to adjudicate violations that exist "only by virtue of" federal law; they are all preempted.

Moreover, Plaintiff has not cited any parallel state law basis for its true claims (violation of § 503A) because **none** of these states have incorporated parallel versions of § 503A (contrary to what each state has done to mirror the FDCA's drug approval requirements). D.I. 1 ¶ 221 (citing to multistate "new drug" provisions tied to FDA new approval and not state compounding laws). Absent a state law corollary, the Court cannot resolve Plaintiff's claims without first deciding federal § 503A compliance—which § 337(a) prevents. Courts in this Circuit preempt putative "state law" claims when they depend on an FDCA violation, rather than a separate, free-standing state law duty. *See Frompovicz v. Niagara Bottling, LLC*, 337 F. Supp. 3d 498, 513 (E.D. Pa. 2018) (preempting unfair competition theory predicated on FDCA requirements rather than an independent state requirement); *Bennett v. Teva Pharm. USA, Inc.*, No. 19-2126, 2021 WL 797834, *2 (D. Del. Mar. 2, 2021) (private litigants cannot enforce the FDCA). Moreover, no state here has adopted § 503A as its own state law rule. With no applicable state law to adjudicate, Plaintiff's attempt to recast his FDCA complaints as state claims cannot escape § 337(a) preemption.

Similarly, Plaintiff does not plead any false statement, such as "FDA has approved oral tirzepatide." Rather, the Complaint asserts that Defendants' statements were "false" or "misleading" **because** compounded oral tirzepatide is an unapproved "new drug" which is purportedly **not compliant with § 503A**, and is allegedly not "safe" or "effective" absent clinical substantiation.[15] Plaintiff's Complaint, thus, represents the exact scenario under which the

---

no private right of action for these violations."); *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010) (FDCA "provides that all actions to enforce FDA requirements shall be by and in the name of the United States"); *Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir. 1995) ("Congress did not intend, either expressly or by implication, to create a private cause of action under FDCA.").

[15] D.I. 1 ¶¶ 69–81, 91–98, 103–11 (marketing allegations), ¶¶ 174–89 (Count III—*per se* NCUDTPA premised on "new drug" and § 503A), ¶¶ 190–200 (Count IV—fraud framed around

Supreme Court and district courts within the Third Circuit have held that the FDCA preempts fraud and negligent misrepresentation theories: where the alleged wrong "would not exist apart from the FDCA." *Buckman*, 531 U.S. at 352; *Scanlon*, 61 F. Supp. 3d at 411-12 (rejecting "parallel" labeling where falsity flows from FDCA promotion/reporting duties).

*Scanlon* is instructive. There, a patient alleged injuries following off-label use of Medtronic's medical device and brought state law claims including negligence, failure to warn, negligent misrepresentation, and fraud. 61 F. Supp. 3d at 409-10. Applying *Buckman*'s implied preemption doctrine, the court concluded that the state law-based claims premised on alleged misstatements to physicians, off-label promotion, or failure to report adverse events were all impliedly preempted under *Buckman* because the claims existed solely by virtue of FDCA requirements, and did not rest on state duties independent of the FDCA. *Id.* at 412.

Here, as in *Scanlon*, Plaintiff's misrepresentation theories rise or fall on precisely the same premise. Each alleged "deceptive" act—including misrepresentations regarding FDA approval status, physician oversight, and purported clinical efficacy—derives entirely from federal drug approval and labeling requirements, not from any free-standing duty imposed by North Carolina law. *See, e.g.*, D.I. 1 ¶ 179(a)-(e). Plaintiff's theories are not based in any independent violation of state law, but derive from federal law. Thus, they are preempted, and Counts III–VI must be dismissed with prejudice.

   2. <u>Plaintiff's RICO Claims Are Likewise Preempted.</u>

Plaintiff's RICO theories (Counts I and II) are likewise preempted because they depend on violations of the FDCA—*i.e.*, they seek private enforcement of federal new drug approval

---

"safe," "effective," and "doctor-supervised" statements), ¶¶ 201–10 (Count V—"unjust" because product is an "unapproved and ineffective drug"), ¶¶ 211–24 (Count VI—multistate *per se* UDAP tied to "new drug"/approval).

requirements. 21 U.S.C. § 337(a); *Buckman*, 531 U.S. at 349–53 (claims that "exist solely by virtue of the FDCA" are impliedly preempted). Plaintiff alleges Defendants "devised and executed a continuing scheme to defraud consumers nationwide by … (d) Collecting recurring electronic payments from consumers under the false pretense that they were receiving legitimate, FDA-comparable GLP-1 therapy." D.I. 1 ¶ 157(d). Because the alleged fraud is premised on Defendants' supposed noncompliance with the FDCA, Plaintiff cannot establish a RICO claim without asking this Court to make determinations reserved exclusively to FDA under § 337(a).

Plaintiff's "predicate acts" underscore the point. Plaintiff pleads that Defendants' "advertising is false because claims of safety, efficacy, and equivalence are invalid without FDA approval," and prescriptions are "fraudulent" because the products are "unapproved and medically ineffective." D.I. 1 ¶ 148(a)–(b). The Complaint reiterates that theme throughout: the "medically ineffective" theory rests on the absence of "clinical studies" and FDA approval; shipments constitute fraud because Defendants sold an "unapproved" "new drug"; and the prescriptions/dispensing allegedly fall outside § 503A. D.I. 1 ¶¶ 151, 155, 157(c), 168–69, 171.

These predicate acts do not invoke a duty *outside* of the FDCA. Instead, they hinge on whether Defendants complied with federal approval and compounding standards, and whether FDA would deem the compounded drugs "unapproved." Indeed, Plaintiff alleges that the RICO claims' predicate acts are all based on the premise that compounded oral tirzepatide should have gone through new drug approval and is medically ineffective. D.I. 1 ¶¶ 148(a) & (b), 151, 155, 157(c), 168-69, and 171. As Plaintiff's RICO claims are also impliedly preempted under § 337(a), and Counts I and II should be dismissed.

### D.    <u>Plaintiff Lacks RICO Standing.</u>

To establish RICO standing, "a RICO plaintiff [must] make two related but analytically distinct threshold showings … (1) that the plaintiff suffered an injury to business or property; and

(2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Maio v. Aetna, Inc.,* 221 F.3d 472, 483 (3d Cir. 2000). Plaintiff satisfies neither requirement.

        1.      <u>Plaintiff Fails to Allege a RICO Injury.</u>

Plaintiff's only paragraph purporting to plead RICO injury asserts that he "and Class Members" paid for products that were not effective, "received nothing of the value promised," and "in some cases incurred additional costs to cancel subscriptions or replace the ineffective medication with legitimate treatment." D.I. 1 ¶ 164. This allegation is insufficient. Plaintiff's assertion that oral tirzepatide "no medical efficacy" rests entirely on his "lack of substantiation" theory: that the drug is ineffective because no clinical studies assess its effectiveness. D.I. 1 ¶¶ 56-57; s*ee also infra* Section IV(E)(3)(c)(1). Allegations that a drug is not FDA approved for a certain medical condition or that its "relative effectiveness" has not been "proven through conclusive evidence" do not establish a RICO injury because they do not show that the drugs were "somehow worth less than what Plaintiffs paid for the drugs." *Intron/Temodar Consumer Class Action*, No. 06-5774, 2009 WL 2043604, *13 (D.N.J. July 10, 2009).

Nor do Plaintiff's personal allegations bridge the gap. He pleads only that he experienced "no physiological effects" after taking the drug for "more than a week," D.I. ¶ 91, and then "immediately … cancelled his subscription to prevent additional charges." *Id*. ¶ 92. A brief, subjective lack of perceived effect is not a property loss, and canceling to avoid future charges defeats any suggestion of ongoing economic harm. *See Maio*, 221 F.3d at 488 (RICO injury requires facts showing the product received was "compromised or diminished"). Plaintiff pled nothing more than conclusory allegations about the ineffectiveness of oral tirzepatide unsupported by particularized factual allegations. *Id.* ("[T]here is no factual basis for appellants' conclusory allegation that they have been injured in their 'property' because the health insurance they actually

received was inferior and therefore 'worth less' than what they paid for it."); *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 520 (D.N.J. 2011) (no RICO standing where Plaintiffs failed to "allege sufficiently that" the drug "was an inferior drug over other drugs").

Finally, Plaintiff cannot manufacture standing by invoking hypothetical costs alleged incurred by unnamed class members. D.I. 1 ¶ 164. He does not allege he incurred any of those costs himself and, in fact, alleges the opposite—he canceled to avoid additional charges. D.I. 1 ¶¶ 92, 164. A named plaintiff must plead his own injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (noting that a plaintiff cannot rely on injuries to unnamed class members; even in a class action, the named plaintiff must show personal injury); *see also Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987) (upholding RICO dismissal where named plaintiff made no payment to defendant despite arguing that "had the class been certified, class members who had paid money might have been located and persuaded to come forward as representatives"). Plaintiff fails to plead an injury to business or property and Counts I and II should be dismissed for lack of standing.

### 2.    Plaintiff Fails to Allege Proximate Cause.

Even if Plaintiff had adequately pled RICO injury (he has not), Plaintiff fails to allege facts showing that any injury was proximately caused by Defendants' alleged racketeering conduct, as required for RICO standing. "[A] plaintiff may sue under § 1964(c) only if the alleged RICO violation was the proximate cause of the plaintiff's injury." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453, (2006). Proximate cause requires a direct relation between the injury asserted and the alleged predicate acts. *Intron/Temodar*, 2009 WL 2043604, *23 (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992) and finding no direct relation between predicate act and injury). The critical question is "whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461 (same).

In RICO actions premised on mail or wire fraud, courts routinely look for allegations of reliance on a misrepresentation to connect the alleged fraud to the plaintiff's loss in a way that satisfies proximate cause (even though reliance is not itself a formal element). *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) (proximate cause demands a direct relation); *Dockery v. Heretick*, No. 17-4114, 2021 WL 3931858, at *12 (E.D. Pa. Sept. 1, 2021) (proximate cause cannot logically be established without reliance), *aff'd*, 2022 WL 14810015 (3d Cir. Oct. 26, 2022).

Here, Plaintiff does not plead proximate cause. He alleges only "[b]ut for Defendants' fraudulent acts, representations and omissions, Plaintiff and Class Members would not have purchased the products." D.I. 1 ¶ 164. Mere "but-for" pleadings are insufficient to claim RICO proximate cause. *Holmes*, 503 U.S. at 268 (rejecting but-for causation as adequate for § 1964(c)). And Plaintiff does not identify any specific misrepresentation that Plaintiff saw, relied upon, and which directly produced his alleged economic loss—precisely the missing links warranting dismissal. *See Dockery*, 2021 WL 3931858 at *12 ("[P]laintiff would not be able to establish even but-for causation if no one relied on a misrepresentation."); *see also Dist. 1199P Health,* 784 F. Supp. 2d at 524. Thus, because the Complaint pleads neither a direct relation between any predicate act and Plaintiff's alleged loss nor any reliance-tethered causal chain that would satisfy proximate cause, Counts I and II must be dismissed for lack of standing.

E.     **Plaintiff Fails To Plead All Claims With the Requisite Particularity Under Fed. R. Civ. P. 9(b).**

In addition to the threshold preemption and standing defects addressed above, Plaintiff's claims fail for a separate and independent reason: they are all fraud-based and therefore, must satisfy the heightened pleading requirements of Fed. R. Civ. P 9(b). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake," a standard the Third

Circuit has repeatedly interpreted to require allegations specifying the "who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). As set forth below: (1) all asserted claims are subject to Rule 9(b) because each rests on alleged false or misleading statements; (2) Plaintiff never alleges who among these Defendants made the misrepresentations; (3) Plaintiff does not plead falsity with particularity, neither explaining why the challenged statements are false nor plausibly alleging that generalized puffery or testimonials are untrue, and his claims are impermissible lack of substantiation claims; (4) Plaintiff does not plead reliance, injury, or proximate causation with particularity, and a prescribing clinician's independent medical judgment breaks any causal chain from consumer-facing marketing to the prescription he received; (5) North Carolina's UDTPA does not recognize claims based on regulatory disagreement; (6) Plaintiff's RICO enterprise and pattern of racketeering allegations fail Rule 9(b) do not allege upon what specific statements he relied and fail to plead more than ordinary commercial activity; and (7) because the § 1962(c) claim fails, the RICO conspiracy count under § 1962(d) necessarily fails.

### 1.  All of Plaintiff's Fraud-Based Claims Are Subject to Rule 9(b).

As a threshold matter, Rule 9(b) applies to all of Plaintiff's claims. First, by its terms, Rule 9(b) plainly applies to Plaintiff's common-law fraud claims (Count IV). Second, it also applies to Plaintiff's state consumer protection law claims (Counts III, VI), which are all predicated on allegations of "false and misleading" "advertisements and representations." D.I. 1 ¶¶ 178-84, 213-220; *see, e.g.*, *Carson v. HP Inc.*, 750 F. Supp. 3d 376, 389–90 (D. Del. 2024) (consumer protection claims based on "assertions that that Defendant knowingly and/or recklessly made false or fraudulent statements or omissions … to Plaintiffs and the classes" required to satisfy Rule 9(b) standard). Third, "[t]he heightened pleading standard required by Rule 9(b) extends to claims of … unjust enrichment that 'sound in fraud.'" *Cavi v. Evolving Sys. NC, Inc.*, No. 15-1211, 2018

WL 2372673, *2 (D. Del. May 24, 2018). Here, Plaintiff bases his unjust enrichment claim (Count V) on Plaintiff's allegations that "Defendants obtained … payments through material misrepresentations and omissions concerning the nature, quality, and legality of the products sold." D.I. 1 ¶ 204. Finally, Rule 9(b) also applies to Plaintiff's RICO mail and wire fraud claims (Counts I-II). D.I. 1 ¶¶ 140-41; 145-152; *see Warden v. McLelland,* 288 F.3d 105, 114 (3d Cir.2002) ("Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)."). Because each claim incorporates fraud allegations, each must satisfy Rule 9(b)'s heightened pleading standards.

### 2. Plaintiff Does Not Adequately Plead That Any Particular Defendant Made the Alleged Fraudulent Representations.

Rule 9(b) "requires, at a minimum, that the plaintiff identify ***the speaker*** of allegedly fraudulent statements." *Klein v. Gen. Nutrition Cos., Inc.*, 186 F.3d 338, 345 (3d Cir. 1999). Instead, his theory suffers from two independent—but mutually reinforcing—fatal defects. First, the statements he identifies as fraudulent come from a nonparty and not from any Defendant, and the Complaint never alleges with particularity that any Defendant authored, approved, or disseminated those statements. Second, Plaintiff relies on collective allegations that lump "Defendants" together, without specifying the acts of any particular Defendant. This failure to allege the "who" of the fraud is fatal to Plaintiff's claims. *Arnold v. X Corp.*, No. 23-528, 2024 WL 4987032, *17 (D. Del. Dec. 5, 2024) (dismissing claims where the complaint did "not allege ***who*** made these statements").

#### a) Website Statements.

Plaintiff's allegations confirm that the challenged marketing statements come from a third-party website—not from any Defendant. He pleads he purchased from "MEDVi.org." D.I. 1 ¶ 82. He further pleads MEDVi is a separate, nonparty "consumer-facing telehealth storefront marketing

oral tirzepatide" that sources certain services from OpenLoop. D.I. 1 ¶ 20. Plaintiff then quotes language from the website as the core of his "false advertising" theory: "GLP1 Medication, Oral Dissolving Tablets," "Highly effective and no needles," "You have a very high chance of success with MEDVi prescribed GLP1 medication," and the site's "Backed by Research" graphic—yet nowhere ties any of those statements to any identified speaker at OpenLoop, Triad Rx, or Triad Buyer. D.I. 1 ¶ 71. Pleading what a third-party said is not pleading who among Defendants said anything at all. That alone fails Rule 9(b).

When Plaintiff attempts to bridge the gap, he abandons the speaker-specific allegations and pivots to an overarching enterprise narrative. ¶ 138 alleges that "together with a network of nominal 'GLP1 marketing' entities—including MEDVi—Defendants formed an association-in-fact enterprise," and in ¶ 144 that "each RICO Defendant participated in the operation and management of the Enterprise." But enterprise labels cannot satisfy Rule 9(b). They do not identify *who* crafted, approved, or published the challenged statements, when they did so, or how those statements were transmitted by a particular Defendant to Plaintiff. D.I. ¶ 138. Likewise, ¶ 169 alleges, at the highest level of generality, that "OpenLoop, Triad Buyer and Triad Rx jointly orchestrated and supplied the infrastructure" while "the consumer-facing GLP1 marketing fronts, including MEDVi, executed the deception by advertising the products as safe, effective, and physician-supervised." That framing concedes that a third party (not Defendants) advertised, omitting the who-said-what-and-when that Rule 9(b) demands for each Defendant. D.I. ¶ 169.[16]

---

[16] The only allegations of any purported fraudulent or racketeering conduct are misrepresentation based. The Complaint pleads no other fraudulent "scheme"; it does not allege Defendants concealed known safety risks, withheld material information in violation of a duty to disclose, fabricated clinical data, or engaged in deceptive conduct independent of the statements. Plaintiff alleges only that Defendants offered and sold a compounded medication that, in his view, should not have been marketed without FDA approval or additional clinical substantiation. That type of regulatory or scientific disagreement does not amount to a deceptive scheme to obtain money or

Plaintiff's unjust enrichment theory underscores the same defect. In ¶ 206, he asserts Defendants "knew or should have known" they were receiving benefits while the third-party websites "funneled consumer payments … while misrepresenting their source, composition, and legitimacy." D.I. 1 ¶ 206. Again, the alleged misrepresentations are attributed to a third party (and unnamed "fronts"), not to any particular Defendant, and the Complaint never pleads with particularity that any Defendant authored, approved, or disseminated the statements (notably none of which Plaintiff says he saw).

Finally, Plaintiff's "similar websites" allegation is not a substitute for particularity. He asserts various sites are "substantially similar" and follow "a similar layout and marketing script," D.I. 1 ¶¶ 66–67, but that describes a process, not a speaker. Even on Plaintiff's own screenshots, content varies across websites, confirming he cannot plead the "who, what, when, where, and how" as to any Defendant. *Id.* ¶ 67 (comparing language from three separate consumer-facing websites); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (conclusory assertions do not nudge claims from conceivable to plausible). Plaintiff's own pleading assigns the challenged verbiage to a nonparty (¶¶ 71, 206), and couches Defendants' role in non-particularized "enterprise" and "infrastructure" labels (¶¶ 138, 144, 169). That is precisely the sort of collective, speaker-less pleading Rule 9(b) forbids. His claims therefore fail for lack of particularity.

b)     *Impermissibly Lumping "Defendants" Together.*

Even setting aside from the third-party statements, Plaintiff still fails to allege the role of any specific defendant with the particularity required to satisfy Rule 9(b). "When the acts of multiple defendants are alleged to constitute fraud, plaintiffs must ***separately plead the allegedly***

---

property by fraud under RICO or any fraud theory. Without well-pled facts showing deceptive conduct or concealment, the Complaint does not state any fraud predicate.

***fraudulent acts of each defendant*** to comply with Rule 9(b)." *Rowe v. Metabolife Int'l, Inc.*, No. 03-4346, 2004 WL 292475, *2 (E.D. Pa. Jan. 20, 2004) (where plaintiff alleged that the two defendants "had different roles in the production and sale of the product in question," but "addresse[d] all of the allegations" of fraud "to the Defendants, generally" the court dismissed the claims for failure to satisfy Rule 9(b)).

Here, Plaintiff has alleged that Defendants have distinct roles in the marketing, sale, and distribution of oral tirzepatide. *See, e.g.*, D.I. 1 ¶ 139 ("OpenLoop supplies the telehealth infrastructure and 'provider' network; Triad Rx and Triad Buyer manufacture, compound, and distribute the products.").[17] Just as in *Rowe*, despite alleging the distinct and different roles of the Defendants, Plaintiff impermissibly bases claims on generic allegations of fraud by "Defendants, generally."[18] Vague, collective allegations against all Defendants cannot satisfy Rule 9(b). *Chaleplis v. Karloutsos*, 579 F. Supp. 3d 685, 708 (E.D. Pa. 2022) (dismissing claims that "provides little detail about Defendants' respective roles in the scheme and leaves unclear how much of the alleged fraud is attributable to a non-party"). Because the Complaint does not allege which Defendant made which statement to whom, Rule 9(b) is not satisfied, and the fraud-based claims must be dismissed.

3.    Plaintiff Does Not Adequately Plead Falsity.

Rule 9(b) requires a plaintiff to "explain why the statements were fraudulent." *Accelerant Twister, LLC v. Marjo, LLC*, No. 22-1366, 2023 WL 4457422, *5 (D. Del. July 11, 2023). Instead,

---

[17] *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) (upholding dismissal of fraud claim where Plaintiff "failed to specify the defendant or agent making the alleged fraudulent statement"); *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (where plaintiffs failed to plead "which defendant(s) made misrepresentations to which plaintiff(s)," no fraud-based RICO claims).
[18] *See, e.g.*, D.I. 1 ¶ 140 ("Defendants" devised the alleged scheme), ¶ 170 ("Defendants" collectively directed/caused racketeering activity), ¶ 178 ("Defendants" engaged in unfair and deceptive acts), ¶ 192 ("Defendants" intentionally misrepresented facts).

the Complaint gestures broadly to "marketing and representations" (D.I. 1 ¶ 87); "representations made on websites such as medvi.org and affiliated domains" (*id.* ¶ 147); and "false and misleading representations via internet advertisements and intake portals" (*id.* ¶ 157). From these scattered references, Plaintiff appears to contend that (1) general statements about GLP-1s and MEDVi's telehealth process are false; (2) consumer testimonials posted on MEDVi website were false; and (3) representations about the safety and effectiveness of oral tirzepatide on the MEDVi website are false. But Plaintiff never pleads facts showing that any of these categories of statements were actually untrue. This failure to allege *why* any statement is false is independently fatal to all fraud-based claims under Rule 9(b).

### a)    *Plaintiff Has Not Sufficiently Alleged That Statements Concerning GLP-1s or the Telehealth Process Generally Were False.*

Plaintiff challenges several high-level statements that do not, on their face, concern oral tirzepatide. For instance, Plaintiff shows the following screenshot from MEDVi's website, claiming that it "falsely represents oral tirzepatide's safety and efficacy as 'backed by research." D.I. 1 ¶ 71. But the statement at issue does not reference oral tirzepatide at all. At most, it conveys that the advertised *program* is "backed by research," research that Plaintiff does not allege is nonexistent or inaccurate. But Plaintiff's "simple assertion that [this] communication is false or misleading does not contain the precision or substantiation necessary to satisfy Rule 9(b)'s heightened pleading standard." *State Farm Mut. Auto. Ins. Co. v. Ficchi*, No. 10-555, 2011 WL 2313203, *7 (E.D. Pa. June 13, 2011).

Plaintiff likewise points to the advertisement's generalized representations about "'personalized care and GLP-1 medication,' and a process that is 'Fast' and 'Easy to start.'" D.I. 1 ¶ 73. Plaintiff identifies no facts showing these statements are inaccurate—there is no allegation that MEDVi does not offer GLP-1 medications, or that its intake process is not fast or easy.

Moreover, these are classic examples of "unquantifiable, ambiguous, and vague" statements that constitute inactionable puffery. *Painaway Australia Pty Ltd. ACN 151 146 977 v. MaxRelief USA, Inc.*, No. 18-3854, 2022 WL 1028024, *4 (E.D. Pa. Apr. 6, 2022); *see also Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 608 (D.N.J. 2016) (claims of "excellent service and support" inactionable puffery); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011) ("[T]erms like … 'fastest, easiest' are classic examples of generalized puffery."); *Tristan v. Bank of Am.*, No. 22-00183, 2023 WL 4417271, *4 (C.D. Cal. June 28, 2023) (statements that service was "fast, safe and easy" constituted "non-actionable puffery). Therefore, Plaintiff therefore fails to plead falsity with respect to any GLP-1 related or telehealth process related statements under Rule 9(b).

> b)    *Plaintiff Has Not Sufficiently Alleged That the Website's Customer Testimonials are False.*

Plaintiff next challenges customer testimonials on MEDVi's website—again without alleging that they are false. For instance, Plaintiff references statements such as "18% average weight loss" and testimonials showing "real patients achieving transformative results," D.I. 1 ¶¶ 74-75. But he never alleges that customers did not obtain these results, or that the testimonials in question did not "show real patients." D.I. 1 ¶ 75. Rule 9(b) requires more than insinuation; it requires factual allegations establishing falsity. *Garner v. Glob. Plasma Sols. Inc.*, 590 F. Supp. 3d 738, 745 (D. Del. 2022) (dismissing claims where plaintiff did not say the testimonials are false or suggest they were fabricated). Accordingly, Plaintiff has again failed to meet the Rule 9(b) standard by specifically pleading that these statements are false or misleading.

> c)    *Plaintiff Did Not Sufficiently Alleged that Defendants Made False Statements About the Safety or Efficacy of Oral Tirzepatide.*

Plaintiff's core falsity theory rests on the premise that oral tirzepatide is inherently ineffective and therefore any representation of effectiveness is *per se* false or misleading. D.I. 1 ¶

4. The general scientific literature Plaintiff cites about peptide absorption and other products not produced by defendants—none of which Plaintiff is alleged to have ever reviewed—does not transform the challenged statements into fraudulent misrepresentations. D.I. 1 ¶¶ 37–57. To plead falsity, Plaintiff must allege facts showing that oral tirzepatide does not work—not simply complain that there are no clinical studies or that he personally did not experience immediate effects. Plaintiff offers two theories of falsity, neither sufficient: (1) using a lack of substantiation theory; and (2) referring to his own experience with oral tirzepatide and customer reviews.

(1)  Plaintiff's Lack of Substantiation Theory Fails.

Notably absent from the Complaint are **any** allegations that oral tirzepatide has been shown to be **ineffective** by scientific studies. Instead, Plaintiff asserts that because no peer-reviewed studies currently establish oral tirzepatide's efficacy, statements about its effectiveness must be false. D.I. 1 ¶¶ 56-57. This is classic, impermissible "lack of substantiation" theory—an attempt to flip the burden and require Defendants to prove the truth of their statements.

Courts reject such theories. Recently, in *Eli Lilly & Co. v. Adonis Health Inc. d/b/a Henry Meds*, manufacturer Eli Lilly pursued almost the exact theory Plaintiff asserts here, challenging oral tirzepatide marketing by a telehealth platform because "there are no scientific studies" supporting efficacy. *Eli Lilly & Co. v. Adonis Health, Inc.* ("*Henry*"), No. 25-03536, 2025 WL 2721684, *6-7 (N.D. Cal. Sept. 24, 2025). Lilly's Complaint explicitly relied on the **absence** of clinical studies to challenge Henry's safety and efficacy claims, arguing "that the claim that compounded GLP–1s (and therefore, Henry's oral tirzepatide) are 'safe and effective' is false because this implies that there are scientific studies establishing this when in reality there are none." *Id.* *7. The court rejected the theory, holding that plaintiff "must particularly allege falsity of the challenged statements, and not just that a defendant's statement **lacked support**." *Id.* Thus, "[u]nder the heightened pleading standards for fraud under Rule 9(b), a plaintiff may not sustain

false advertising claims based solely on 'lack of substantiation' grounds." *Id.*

The facts of *Henry* are directly on point. Plaintiff's allegations that oral tirzepatide is not FDA-approved, has "no demonstrated mechanism," "has yet to be shown" to be effective, or "lacks any demonstrated efficacy," D.I. 1 ¶¶ 4, 49, mirror the lack of substantiation theory rejected in *Henry*, and likewise fail to plead falsity. Notably, *Henry* is not an outlier. Rather, its reasoning is consistent with a broad body of case law across jurisdictions—including within the Third Circuit— rejecting false advertising claims predicated on a "lack of substantiation" theory.[19] Plaintiff's fraud and consumer protection claims then, just like Lilly's, cannot meet Rule 9(b).

And as to Plaintiff's RICO claims, because those claims are predicated on breaches of the federal mail and wire fraud statutes, without plausible allegations that any alleged statements conveyed by the wires or by mail were actually false or deceptive (as opposed to merely unsubstantiated), the Complaint cannot plead a "scheme to defraud" within the meaning of those statutes. That failure is fatal to Plaintiff's RICO claims.

      (2)    Plaintiff's Personal Experience and Selected Anecdotal Online Reviews Do Not Plausibly Establish Falsity.

Plaintiff also relies on his own anecdotal claim that he "experienced no physiological effects" after approximately one week of taking oral tirzepatide. D.I. 1 ¶ 91. But Plaintiff does not allege that Defendants promised weight-loss results within one week or that any drug would

---

[19] *See, e.g.*, *In re Bayer Phillips Colon Health Probiotics Sales Pracs. Litig.*, No. 11-03017, 2017 WL 1395483, *9-10 (D.N.J. Apr. 18, 2017) (stating that plaintiffs have "the burden to show that the defendant's alleged misrepresentations were actually false," and "[m]erely proving that the claims are unsubstantiated is insufficient"); *In re Gerber Probiotic Sales Pracs. Litig.*, No. 12-835, 2013 WL 4517994, *10 (D.N.J. Aug. 23, 2013) (holding that state law claims based on a "lack of substantiation theory" are dismissed); *Scheuerman v. Nestle Healthcare Nutrition, Inc.*, No. 10-3684, 2012 WL 2916827, *7 (D.N.J. July 17, 2012) (finding that "to the extent that plaintiffs' claims reduce to substantiation claims, those claims fail to demonstrate entitlement to relief" under NJ and CA law).

produce results that quickly.[20] A single individual's short-term, subjective experience cannot plausibly allege that every, or indeed any, statement that Defendants made about the effectiveness of oral tirzepatide was inherently false.

Plaintiff then turns to the website's customer reviews. D.I. 1 ¶ 95. But Plaintiff's cherry-picked and partially-quoted customer reviews do not show that oral tirzepatide was ineffective. In ¶ 100, he cites a review where a customer reported appetite suppression only after switching to injections, implying dissatisfaction with the oral formulation. D.I. 1 ¶ 100. But the full review (which Plaintiff omits) reflects overall satisfaction:

> I was hesitant about starting compounded tirzepatide. I began on the pill for the first 2 months, stepping up dosage every month until the injection was the only next step. The slow transition in dosage prevented any side effects for me, even though they ship medication for the side effects, I didn't have to use any and stopped asking for refills. I definitely felt the effect of the appetite suppression once I switched to the injection and I have experienced more consistent weight loss since.[21]

Nowhere does this review claim that the patient was dissatisfied with the oral formulation or that it was ineffective; it merely states that the user gradually increased dosage and found that the higher-dose injectable version was ultimately more effective.[22] Plaintiffs' allegations concerning

---

[20] The studies that Plaintiff himself cites concerning the effectiveness of other GLP-1 drugs, such as oral semaglutide, analyze the effects of those drugs over a period of multiple weeks—indeed months. *See, e.g.*, D.I. 1 ¶ 44 n.91 (citing Andersen, Knop & Vilsbøll, *A Pharmacological and Clinical Overview of Oral Semaglutide for the Treatment of Type 2 Diabetes*, 81 Drugs 1003, 1012 (2021) (compiling studies showing effects over periods of 26, 52, and 78 weeks)).

[21] *See* https://www.consumeraffairs.com/health/medvi.html?page=3#sort=top_reviews&filter=5 (last accessed January 23, 2026) (cited in D.I. 1 ¶100 (Gorman Decl. Ex. C).

[22] Similarly, Plaintiff quotes a review stating "I have been using Medvi for 6 months now. I started with the sublingual tirzepatide tablets and eventually moved up to the injectable version," D.I. 1 ¶ 100, as somehow supporting the conclusion that oral tirzepatide is completely ineffective—while the *actual* review says no such thing, and again merely states that the patient changed their dose and route of administration over time. The same website cited by Plaintiffs includes multiple customers saying that oral tirzepatide *was* effective for them. And Plaintiff's own Complaint cites a patient testimonial stating that oral tirzepatide provided by Triad RX "made me feel exactly like I did on the 2.5 MJ starter as well as Reta" and that the customer's "[f]ood noise is absolutely gone" with the customer stating "I wanted to try the subL[ingual] just as an experiment; I'm only

Plaintiff's experience and customer feedback thus fail to establish any representations by Defendants concerning the effectiveness of oral tirzepatide were false. Courts reject falsity allegations based on cherry-picked reviews.[23] Plaintiff's selective and distorted use of online reviews cannot satisfy Rule 9(b) and should therefore be dismissed.

    4.    <u>Plaintiff Does Not Allege Reliance or Injury, and His Injuries Are Remote (Not Proximate).</u>

Plaintiff's claims also fail because he does not adequately plead reliance or causation, both of which are required under Rule 9(b) and under every state consumer protection statute invoked in the Complaint. To establish his North Carolina common fraud claim, Plaintiff must plead with particularity that he "relied on [Defendants'] representation and [his] reliance was reasonable." *Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App'x 276, 281 (4th Cir. 2014). The consumer protection statutes of California, North Carolina and Michigan also expressly require plaintiffs to plead reasonable reliance on alleged misrepresentations to allege consumer fraud claims.[24] And the consumer protection statutes of Colorado, Connecticut, Florida, Illinois, Missouri, New Jersey, New Mexico, New York, South Carolina, Tennessee and Washington all require a plaintiff to plead a causal connection between the alleged misrepresentation and Plaintiff's injury, a causal connection that cannot be satisfied where a Plaintiff completely fails to plead that the alleged false

---

5 days in and 3 lbs down but I'm glad I did!" Compl. ¶ 21 n.35 (citing https://www.reddit.com/r/tirzepatidecompound/comments/1h1gjex/just_fyi_the_sublingual _tirz_works/).

[23] *See Tobin v. Samsung Elecs. Am., Inc.*, No. 18-12473, 2019 WL 1399557, *8 (D.N.J. Mar. 27, 2019) ("unverified and unattributed complaints of a design defect" in "customer reviews" insufficient to satisfy Rule 9(b)); *Rait v. Sears, Roebuck & Co.*, No. 08-2461, 2009 WL 2488155, *3 (D.N.J. Aug. 11, 2009) ("various and disparate internet complaints" insufficient to support allegations of awareness of defects with product).

[24] *See Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 338 (D.N.J. 2014) (applying California UCL); *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 584 (E.D.N.C. 2020); *Kussy v. Home Depot U.S.A. Inc.*, No. 06-12899, 2006 WL 3447146, *7 (E.D. Mich. Nov. 28, 2006).

advertising led to his purchase.[25] *See Carson v. HP Inc.,* 750 F. Supp. 3d 376, 390 (D. Del. 2024) (where plaintiff fails to plead the elements of fraudulent misrepresentation or omission/concealment, the claim fails under the state statutory consumer protection statutes).

Plaintiff's sole allegation attempting to connect any purported misrepresentation to his purchase is the vague assertion that "[b]ased on marketing and representations, Plaintiff understood that the product he purchased was a legitimate and clinically effective oral version of tirzepatide, comparable in therapeutic effect to FDA-approved injectable GLP-1 medications." D.I. 1 ¶ 87. This allegation is insufficient under Rule 9(b) for several reasons. Plaintiff does not allege what specific "marketing and representations" *he* was exposed to and relied on, whether the "marketing and representations" correspond with any of the specific representations that Plaintiff alleges are present on the MEDVi website, or when he was exposed to any relevant "marketing and representations."

Courts routinely reject generic "exposure" allegations because they do not identify which statements were seen, when, or that they induced the purchase. In *Gray v. Bayer Corp.*, plaintiff brought a putative class action against Bayer following an FTC consent decree against Bayer's advertising for vitamins that made "unsubstantiated claims that the product increased metabolism, enhanced metabolism through its EGCG content, helped prevent weight gain associated with age-

---

[25] *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003); *Kenney v. Healey Ford-Lincoln-Mercury, Inc.*, 730 A.2d 115, 117-118 (1999); Fla. Stat. § 501.211(2); *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 155 (Ill. 2002); Mo. Rev. Stat. § 407.025; *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526–27 (D.N.J. 2008); N.M. Stat. § 57-12-10(b); *Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 482 (D. Del. 2010); *Doe 9 v. Varsity Brands, LLC*, No. 22-3509, 2023 WL 4113198, *11 (D.S.C. June 21, 2023); *Land v. Dixon*, No. 2004-03019, 2005 WL 1618743, *4 (Tenn. App. July 12, 2005); *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1188 (W.D. Wash. 2010)).

related metabolism decline, and helped users control their weight by enhancing their metabolism."
*Gray v. Bayer*, No. 08-4716, 2009 WL 1617930, *1 (D.N.J. June 9, 2009). Plaintiff alleged that she was "***exposed*** to the advertising, marketing and labeling representations by Bayer about increased metabolism" but failed to identify ***what*** representations plaintiff relied upon or ***when*** and ***how*** she was exposed to those misrepresentations and the Court dismissed for failure to specify what was seen and how. *Id.* *1-2. Likewise, in *Snowdy v. Mercedes-Benz USA*, allegations that plaintiffs were merely "exposed to Defendants misrepresentations" were insufficient where the complaint failed to identify any specific exposure. No. 23-1681, 2024 WL 1366446, *17 (D.N.J. Apr. 1, 2024). And *Carson* held that even where a complaint identifies specific misrepresentations, failing to allege which ones ***each plaintiff*** saw requires dismissal. *Carson*, 750 F. Supp. 3d at 391-93. Here, as in *Gray*, *Snowdy* and *Carson*, Plaintiff merely alleges that certain statements were present on the MEDVi website, without claiming whether ***he*** saw any of those statements, when he was exposed to them, or how they influenced his decision to request and purchase oral tirzepatide. That omission is fatal to all fraud-based claims.

Even if Plaintiff had identified a specific statement he relied on (he has not), Plaintiff cannot show such reliance was justifiable or caused Plaintiff to take oral tirzepatide. Under North Carolina law, to obtain a prescription drug, a medical practitioner must first make an independent clinical determination whether to prescribe a drug at all, and, if so, must select the appropriate medication. N.C. GEN. STAT. § 90-1 *et seq.* Practitioners rely upon myriad factors when selecting which drug, if any, is appropriate to treat a patient, such as medical history, comorbidities, and treatment goals and is wholly independent of any marketing materials a patient may have seen. N.C. GEN. STAT. § 90-1.1(5)(B); *In re Actiq Sales & Mktg. Pracs. Litig.*, 307 F.R.D. 150, 170 (E.D. Pa. 2015).

Finally, Plaintiff does not adequately plead reliance or that his alleged injuries were proximately caused by any Defendant. Because he could not obtain oral tirzepatide unless a licensed prescriber independently determined that it was appropriate for him, any alleged reliance on marketing statements could not have proximately caused him to receive the medication. *In re Actiq Sales & Mktg. Pracs. Litig.*, 307 F.R.D. 150, 169–70 (E.D. Pa. 2015) (prescribers rely on multiple clinical factors when prescribing drugs). The Complaint itself alleges the involvement of multiple non-Defendant actors, including a third-party website through which Plaintiff purchased the drug and an independently licensed prescriber who made the clinical decision to prescribe it. D.I. 1 ¶¶ 5-7, 16-21, 66, 85-92. These intervening decisionmakers break the chain of proximate cause under RICO as a matter of law because the alleged injury does not flow directly from any predicate act. *Holmes*, 503 U.S. at 268; *Anza*, 547 U.S. at 460–61. Plaintiff therefore cannot plausibly plead that any representation by any Defendant caused him to take the medication. Even if Plaintiff claimed a specific statement induced his purchase (he does not), the prescriber's independent medical judgment would still bar any plausible showing of proximate cause or reliance. All of Plaintiff's fail under Rule 9(b).

5.    North Carolina UDTPA Rejects Regulatory Disagreement Claims.

North Carolina courts have rejected attempts to plead fraud or UDTPA claims based on subjective disappointment or regulatory disagreement, absent allegations of actual deception and concrete injury. *See, e.g.*, *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88–89 (2013) (UDTPA requires actual deception and injury); *Dalton v. Camp*, 353 N.C. 647, 656 (2001) (same). Because plaintiff does not plausibly allege falsity, causation, or injury, his North Carolina claims fail as a matter of law.

6.     <u>Plaintiff's RICO Claims Do Not Adequately Plead RICO Conduct, A Pattern of Racketeering Activity or A RICO Enterprise.</u>

Plaintiff's RICO claims fail to plead facts demonstrating RICO-remediable conduct, racketeering activity, or a RICO enterprise. In addition to pleading facts supporting injury and causation, a RICO plaintiff must allege four other elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022); 18 U.S.C. § 1962. The term "racketeering activity" encompasses numerous predicate offenses, including mail and wire fraud. 18 U.S.C. § 1961(1). Plaintiff has failed to plead any racketeering activity or a pattern thereof because he does not plead the alleged predicate offenses— mail and wire fraud—with the required specificity. Where, as here, "acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)." *Warden,* 288 F.3d at 114. This requires Plaintiff to plead, at a minimum, the "date, place or time of the fraud … who made a misrepresentation to whom and the general content of the misrepresentation." *Lum*, 361 F.3d at 223-24.

First, Plaintiffs' wire fraud allegations fail to attribute any conduct to any specific Defendant. The Complaint does not identify a single specific "mail" or "wire fraud" incident— *i.e.*, never alleging that "on X date, Y person caused a wire transmission to be sent that said Z." Instead, Plaintiff broadly alleges that Defendants "caused interstate wire communications" in furtherance of the scheme; published ads for oral tirzepatide; caused Triad Rx to ship it; and used telehealth portals to "perpetuate the false impression that the treatments were physician-supervised and medically legitimate." D.I. 1 ¶ 147-148. These lumped-together allegations that do not allege the roles of specific defendants in the alleged mail and wire fraud do not satisfy Rule 9(b). *See*

*Lum*, 361 F.3d at 224.[26]

Second, Plaintiff fails to plead with particularity the contents of any allegedly false or misleading statements. Plaintiff generically points to "online listings and advertisements for 'oral tirzepatide,'" D.I. 1 ¶ 158, but as discussed in Section IV(E)(3)(c) *supra*, he never identifies which specific representations he claims are false; never alleges facts showing the falsity of any particular statement about oral tirzepatide's effectiveness; and never pleads what, if any, alleged misstatements were made to or viewed by him. Accordingly, Plaintiff fails to allege the actual content of the alleged misstatements with sufficient specificity to support a RICO claim. *See Livingston v. Shore Slurry Seal, Inc.*, 98 F. Supp. 2d 594, 598-99 (D.N.J. 2000) (dismissing RICO claim where "although the Complaint described the alleged fraudulent scheme in some detail, it failed to provide sufficient, specific allegations about the alleged misrepresentations made to any of the named plaintiffs."). For these reasons, and for all of the reasons set out in Section IV(E) *supra*, as to why Plaintiff's fraud allegations are defective, Plaintiff has failed to plead claims of mail and wire fraud with the required specificity and therefore failed to plead RICO based on those claims and his RICO claim should be dismissed.

As to the supposed existence of a RICO enterprise, Plaintiff's Complaint describes only routine commercial relationships among a telehealth platform, a pharmacy, and related service providers. Such arm's-length business arrangements cannot constitute an association-in-fact

---

[26] *See also Nelson v. Claussen*, No. 23-01896, 2024 WL 4249730, *10 (D.N.J. Sept. 20, 2024) (dismissing RICO claims based on alleged wire fraud in emails where Complaint "attribute[d] the emails broadly to a group of Defendants"); *Zellner v. Monroe Cnty. Mun. Waste Mgmt. Auth.*, No. 07-1976, 2008 WL 2962595, *9 (M.D. Pa. July 28, 2008) ("[T]his … allegation of mail fraud fails to name … any particular Defendant. Such a failure to include a specific action by the [named defendants] fails under Federal Rule of Civil Procedure 9(b)."); *Gilmour v. Bohmueller*, No. 04-2535 , 2005 WL 241181, *7 (E.D. Pa. Jan. 27, 2005) (dismissing RICO claim where complaint "merely states that certain types of mail and wire communications were made by 'Defendants,' and does not in any way identify those communications, their dates, senders, or recipients").

"enterprise" under RICO, absent facts showing a shared fraudulent purpose and that each defendant participated in the operation or management of the enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).[27]

       7.     <u>Plaintiff's RICO Conspiracy Claim under 1962(d) Fails.</u>

Plaintiff also brings a separate claim for conspiracy to violate RICO under 18 U.S.C. § 1962(d), alleging that "Defendants willfully, knowingly, and unlawfully conspired, confederated, and agreed together and with others to violate 18 U.S.C. § 1962(c)." D.I. 1 ¶ 168. Plaintiff's allegations make clear that this conspiracy claim relies on the exact same allegations underlying his § 1962(c) RICO claim. *See Id.* ¶¶ 169-73. Because Plaintiff's underlying RICO claim fails, the RICO conspiracy claim based upon that deficient claim also fails and should be dismissed.[28]

*  *  *

For all these reasons, every count in the Complaint fails to satisfy Rule 9(b)'s heightened pleading requirements and should be dismissed in its entirety, in addition to the independent grounds for dismissal set forth elsewhere in this brief.

    **F.**    <u>**Several of Plaintiff's State Law Claims Are Fundamentally Flawed.**</u>

       1.     <u>Plaintiff Lacks Standing to Pursue Non-North Carolina State Law Claims.</u>

Plaintiff, a North Carolina resident, is the ***only*** named plaintiff in this action. He asserts individual claims under the laws of North Carolina, but also purports to represent a "Multistate

---

[27] Allegations of parallel conduct or routine commercial relationships do not suffice. *Zakheim v. Curb Mobility LLC*, No. 22-4594, 2023 WL 5339606, *3 (E.D. Pa. Aug. 18, 2023) ("The Third Circuit has made clear that normal business relationships, without more, are insufficient to support an association-in-fact enterprise."); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 366-68 (3d Cir. 2010) (same); *Newtechbio Inc. v. Septicleanse, Inc.*, No. 12-5882, 2014 WL 6667889, *8 (D.N.J. Nov. 24, 2014) (same).

[28] *Lum*, 361 F.3d at 227 ("Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *Dist. 1199P Health*, 784 F. Supp. 2d at 529–30 ("Because Plaintiffs fail to properly allege a RICO claim, Plaintiffs conspiracy to commit RICO also fails.").

Consumer Protection Subclass" in asserting claims under the consumer protection claims under the laws of 13 other states. *See* D.I. 1 ¶¶ 115, 201-224. As a North Carolina resident, however, Plaintiff has no standing to assert claims under the laws of states in which he does not reside. *See, e.g.*, *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 149 (E.D. Pa. 2009) ("plaintiffs have standing to assert claims only under the laws of those states where the plaintiffs are located or their members reside. The Court will dismiss those claims arising under all other states"). All of Plaintiff's claims based on state laws other than North Carolina must therefore be dismissed because a class action suit is permissible only "so long as at least one named plaintiff has standing" to assert the claim alleged. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 364 (3d Cir. 2015).[29] Accordingly, *all* claims asserted on behalf of the Multistate Consumer Protection Subclasses under each identified state law should be dismissed.

### 2.    Plaintiff Lacks Standing to Pursue Injunctive Relief.

Plaintiff seeks injunctive relief under the NCUDTPA and other state consumer protection laws. D.I. 1 ¶¶ 189, 224.  He specifically asks the Court to enjoin Defendants from manufacturing, marketing, advertising, selling, or distributing oral tirzepatide, and to require new compliance and disclosure measures. *Id.* ¶ 81. But Plaintiff lacks Article III standing to seek this prospective relief. To obtain an injunction, a plaintiff must show a likelihood of future injury arising from the defendant's conduct, and in a class action, at least one named plaintiff must satisfy that requirement. *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012). Here, Plaintiff alleges

---

[29] In some cases where a plaintiff pleads classes/subclasses but lacks standing for each implicated state, courts defer the standing determination until class certification. But those cases involve situations where, at a minimum, there were multiple named plaintiffs bringing claims under the laws of multiple states, or where plaintiffs have brought common law claims on behalf of a nationwide class. *See, e.g.*, *Maugain v. FCA US LLC*, No. 22-116, 2023 WL 1796113, *5 (D. Del. Feb. 7, 2023). But here, the common law claims are brought solely under North Carolina law, while the remaining *statutory* claims are brought in 13 other states where Plaintiff lacks standing.

that he made a single purchase of oral tirzepatide; took the medication for approximately a week; stopped taking it; and cancelled his subscription to avoid future charges. D.I. 1 ¶ 92. Just as in *McNair*, unless Plaintiff chooses to initiate another prescription for oral tirzepatide (and he states no intention to do so), there is no plausible risk of future injury. *McNair*, 672 F.3d at 224.

The Third Circuit has made clear that a plaintiff who has no intention of repurchasing a challenged product is "simply not at risk of suffering" future harm, and thus cannot obtain injunctive relief. *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 293 (3d Cir. 2018). Courts do not recognize "stop me before I buy again" theories of standing. *Id*. Accordingly, Plaintiff's injunctive relief claims must be dismissed.

3.    Plaintiff's South Carolina and Tennessee Consumer Protection Claims Fail.

Plaintiff seeks to assert claims on behalf of absent class members under the consumer protection laws South Carolina and Tennessee (part of Count VI). But both statutes prohibit class actions. The South Carolina Unfair Trade Practices Act provides that an aggrieved party "may bring an action individually, but not in a representative capacity, to recover actual damages" for a violation of the act. S.C. Code Ann. § 39-5-140. The Tennessee Consumer Protection Act provides that an aggrieved party "may bring an action *individually* to recover actual damages" but "[n]o class action lawsuit may be brought to recover damages for an unfair or deceptive act or practice declared to be unlawful by this part." Tenn. Code § 47-18-109. These statutory class action bars reflect the substantive policy choices by both states, and courts in this Circuit have consistently enforced them.[30] Accordingly, Plaintiff's class claims under these statutes must be dismissed.

---

[30] *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 844 (E.D. Pa. 2019) ("[T]he class action bar provision specifically included in the … South Carolina consumer protection law reflects a substantive policy choice."); *In re Fragrance Direct Purchaser Antitrust Litig.*, No. 23-02174, 2025 WL 579639, *19 (D.N.J. Feb. 21, 2025) (dismissing South Carolina consumer protection claims); *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 389 (D.N.J. 2018) ("[C]onsistent with the courts to have considered this issue, the Court finds that the class action

4.    Plaintiff's Unjust Enrichment Claim (Count V) Fails Because It Is Duplicative of His Deficient Fraud-Based Claims.

Plaintiff's unjust enrichment claim merely rehashes Counts I-IV, alleging Defendants were unjustly enriched because Plaintiffs "purchased 'oral tirzepatide' medications through Defendants' GLP-1 marketing websites, including medvi.org, in reasonable reliance on Defendants' representations regarding safety, efficacy, and medical supervision." D.I. 1 ¶ 70. Courts routinely reject such derivative unjust enrichment claims, recognizing that they  "rises and falls with the underlying claims." *Greenwald Caterers Inc. v. Lancaster Host, LLC*, 599 F. Supp. 3d 235, 263 (E.D. Pa. 2022). Because the underlying claims fail, his  unjust enrichment claim does too. *Gahagan v. Penn Abstract & Land Servs., LLC*, No. 24-1921, 2025 WL 1647730, *3 (M.D. Pa. June 9, 2025).

### G.    In the Alternative, This Court Should Compel Individual Arbitration.

This Court should compel Plaintiff to arbitrate his claims on an individual, not class, basis. MEDVi's "User Agreement," governs use of the website's services. Gorman Decl. Ex. D (last revised Jan. 1, 2024). The terms apply to all customer use of the site, and to all of the "services, features, content or applications" offered by the website "and our affiliated brands and products." *Id.*  During the intake process, MEDVi required users to affirmatively check a box acknowledging the hyperlinked terms, which link to the User Agreement containing the arbitration clause, and that a user could not proceed to payment unless the box was checked. Because Plaintiff's allegations are premised on his use of MEDVi's site to obtain the product, the website's full integrated web flow—including the checkbox acceptance—is properly considered in a Rule 12(b)(6) motion.[31]

---

bar in Tennessee controls in federal court."); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 417 (D.N.J. 2018) (dismissing Tennessee consumer protection claims).

[31] Plaintiff's claims rely on his experience on MEDVi's website, including the pages he was required to complete before purchasing the drug, making those pages integral to the Complaint for purposes of Rule 12(b)(6). Thus, he "cannot prevent a court from looking at the texts of the

The very top of the User Agreement notes—prominently in all caps—that:

THIS USER AGREEMENT CONTAINS A MANDATORY ARBITRATION PROVISION IN SECTION XXI WHICH INCLUDES A CLASS ACTION, CLASS ARBITRATION, AND JURY TRIAL WAIVER. THESE PROVISIONS REQUIRE THE USE OF ARBITRATION TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS. BY ACCEPTING THESE TERMS, YOU EXPRESSLY AGREE TO BE BOUND BY AND ABIDE BY THIS AGREEMENT, INCLUDING THE MANDATORY ARBITRATION PROVISION AND THE CLASS ACTION WAIVER PROVISION.

PLEASE READ THESE TERMS OF USE CAREFULLY BEFORE USING OUR SERVICES OR WEBSITE.

Gorman Decl. Ex. D. The User Agreement's arbitration agreement and class action waiver states:

## XXI. Governing Law; Dispute Resolution; Arbitration

YOU AND WE AGREE THAT ALL DISPUTES BETWEEN YOU AND US (WHETHER OR NOT SUCH DISPUTE INVOLVES A THIRD PARTY) WITH REGARD TO YOUR RELATIONSHIP WITH US (INCLUDING DISPUTES RELATED TO THIS USER AGREEMENT, YOUR USE OF THE SERVICES, AND/OR RIGHTS OF PRIVACY AND/OR PUBLICITY), WILL BE RESOLVED EXCLUSIVELY BY BINDING ARBITRATION, EXCEPT THAT YOU MAY ASSERT CLAIMS IN SMALL CLAIMS COURT IF YOUR CLAIMS QUALIFY. YOU AND WE EACH AGREE THAT CLASS OR REPRESENTATIVE ARBITRATIONS, AS WELL AS CLASS OR REPRESENTATIVE ACTIONS, ARE NOT PERMITTED UNDER ANY CIRCUMSTANCES, AND THAT YOU AND WE ARE EACH WAIVING THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION.

You and we each agree that you and we are further waiving our respective rights to sue or go to court to assert or defend our rights under this User Agreement. You and we each agree that the Federal Arbitration Act and federal arbitration governs the interpretation and enforcement of this provision.

Except as provided below, you and we agree that any cause of action, legal claim, or dispute between you and us arising out of or related to these Terms must be resolved by arbitration on an individual basis. Class actions and class arbitrations are not permitted; you and we may bring a claim only on your own behalf and cannot seek relief that would affect other MEDVi users. If there is a final judicial determination that any particular claim (or a request for particular relief) cannot be arbitrated in accordance with this provision's limitations, then only that claim (or only that request for relief) may be brought in court. All other claims (or requests for relief) remain subject to this provision.

*Id.* § XXI. Plaintiff's claims arise directly from his use of MEDVi's website to obtain a prescription. D.I. 1 ¶¶ 5, 69-88. His allegations fall squarely within the Agreement's "arising out of or relating to" language. *Id.* (alleging that Plaintiff accessed MEDVi's website, entered his medical and personal information through the online intake form, and paid for the oral tirzepatide he ordered—steps forming the basis of prescription, purchase, and fulfillment process).

While Defendants are not signatories to the User Agreement, nonsignatories to a contract

---

documents on which his claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (on a motion to dismiss, a court may consider matters integral to the claim or subject to judicial notice).

may bind signatories (like Plaintiff) to arbitrate disputes when "traditional principles of state law allow a contract to be enforced by or against non-parties to the contract through … estoppel." *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Delaware law[32] embraces "equitable estoppel" to allow nonsignatories to enforce arbitration agreements "when the signatory to the contract containing an arbitration clause raises allegations of ***substantially interdependent and concerted misconduct*** by both the nonsignatory and one or more of the signatories to the contract." *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. 2037-N, 2006 WL 2473665, *5 (Del. Ch. Aug. 22, 2006) (applying equitable estoppel where plaintiff alleged concerted misconduct by both a nonsignatory defendant and a signatory to an agreement containing an arbitration provision). This principle also extends to third parties enforcing class action waivers in an arbitration agreement. *See Colon v. Conchetta, Inc.*, No. 17-0959, 2017 WL 2572517, *4-6 (E.D. Pa. June 14, 2017) (applying equitable estoppel to enforce class action waiver and compel arbitration).

The crux of Delaware's test, then, is what ***Plaintiff's Complaint*** asserts.  Thus, Defendants summarize Plaintiff's Complaint allegations to establish equitable estoppel applies. Notably, in so summarizing, Defendants are not adopting Plaintiff's Complaint, or the allegations regarding the alleged relationship between Defendants and MEDVi, as accurate or truthful. Here, Plaintiff's Complaint alleges substantial interdependence and concerted wrongdoing by a signatory to the contract (MEDVi) and nonsignatories (Defendants). The foundation of Plaintiff's Complaint is that websites like MEDVi operate as a "front" for OpenLoop. D.I. 1 ¶¶ 4-7, 105-106. Plaintiff asserts that the website misled him into falsely believing that oral tirzepatide worked. *Id*. ¶¶ 69-81 ("MEDVi's Website and Representations"), *id.* ¶¶ 82-92 ("Plaintiff's Experience"). Plaintiff

---

[32] The User Agreement provides that "[t]he laws of the State of Delaware, to the extent not preempted by or inconsistent with federal law, will govern these Terms and any claim, without regard to conflict of law provisions." Gorman Decl. Ex. D § XXI.

alleges that "[b]ased on marketing and representations, Plaintiff understood that the product he purchased was a legitimate and clinically effective oral version of tirzepatide, comparable in therapeutic effect to FDA-approved injectable GLP-1 mediations." *Id.* ¶ 87. Plaintiff theorizes, "upon information and belief," that

> the oral tirzepatide tablets marketed through websites such as MEDVi were not conceived of or created by those nominal 'brands.' Rather, the products were already being manufactured in bulk by Triad Rx under the direction or control of OpenLoop and its related entities. These consumer-facing websites serve primarily as lead-generation and payment-processing portals. They exist to drive orders to the compounding and distribution network operated by OpenLoop and Triad Rx, which are the entities actually producing, packaging, and shipping the medication to consumers.

*Id.* ¶¶ 105-09. Plaintiff even explicitly states that Defendants and MEDVi were "part of the same scheme and operation" through which Defendants sold oral tirzepatide, *id.* ¶ 6, and alleges Defendants and MEDVi were all part of the same RICO enterprise, *id.* ¶ 144.

Plaintiff's claims all rest on allegations of substantial interdependence and concerted misconduct. Thus, Defendants can enforce the User Agreement's arbitration provision. *Wilcox*, 2006 WL 2473665, *5. To hold otherwise would allow Plaintiff to evade a valid and enforceable arbitration provision, rendering the arbitration provision meaningless and "the federal policy in favor of arbitration effectively thwarted." *Id.* *5. If the Court does not dismiss Plaintiff's Complaint on other grounds and concludes that arbitrability cannot be resolved under Rule 12(b)(6), Defendants request limited discovery on arbitrability, followed by prompt Rule 56 adjudication, with a stay of these proceedings in the interim. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772–76 (3d Cir. 2013) (outlining procedures for determining motions to compel arbitration motions).

V.    **CONCLUSION**

For the foregoing reasons, Plaintiff's Class Action Complaint should be dismissed in its entirety. In the alternative, this Court should compel individual arbitration.

Dated: January 29, 2026

Respectfully submitted,

**BLANK ROME LLP**

 */s/ Adam V. Orlacchio*           
Adam V. Orlacchio (#5520)
James G. Gorman III (#6284)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
adam.orlacchio@blankrome.com
james.gorman@blankrome.com

Shannon E. McClure (*pro hac vice*)
One Logan Square, 130 N. 18th Street
Philadelphia, Pennsylvania 19103
Telephone: 215-569-5500
Facsimile: 215-569-5555
shannon.mcclure@blankrome.com

Rachael G. Pontikes (*pro hac vice*)
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone: (312) 776-2600
Facsimile: (312) 776-2601
rachael.pontikes@blankrome.com

*Attorneys for Defendants*

41