# EXHIBIT A



**FIGURE 1**
(Instagram Advertisement dated January 8, 2026)



**FIGURE 2**
(Instagram Advertisement dated January 10, 2026)



**FIGURE 3**
(Instagram Advertisement dated January 5, 2026)



**FIGURE 4.1**
(Instagram Advertisement dated February 15, 2026)



**FIGURE 4.2**
(Instagram Advertisement dated February 15, 2026)



**FIGURE 5.1**
(Instagram Advertisement dated February 15, 2026)



**FIGURE 5.2**
(Instagram Advertisement dated February 15, 2026)



**FIGURE 6.1**

OpenLoop, *GLP-1 Demand Telehealth Solution*, https://info.openloophealth.com/glp1-demand-telehealth-solution (screenshot dated February 2, 2026)



**FIGURE 6.2**

OpenLoop, *GLP-1 Demand Telehealth Solution*, https://info.openloophealth.com/glp1-demand-telehealth-solution (screenshot dated February 2, 2026)



**FIGURE 6.3**

OpenLoop, *GLP-1 Demand Telehealth Solution*, https://info.openloophealth.com/glp1-demand-telehealth-solution (screenshot dated February 2, 2026)



**FIGURE 7.1**
OpenLoop, *GLP-1 Demand Telehealth Solution*, https://info.openloophealth.com/glp1-demand-telehealth-solution (screenshot dated March 17, 2026)



**FIGURE 7.2**

OpenLoop, *GLP-1 Demand Telehealth Solution*, https://info.openloophealth.com/glp1-demand-telehealth-solution (screenshot dated March 17, 2026)



**FIGURE 7.3**

OpenLoop, *GLP-1 Demand Telehealth Solution*, https://info.openloophealth.com/glp1-demand-telehealth-solution (screenshot dated March 17, 2026)

# EXHIBIT B



**FIGURE 1**
(Instagram Advertisement dated January 19, 2026)



**FIGURE 2**
(Instagram Advertisement dated January 27, 2026)



**FIGURE 3**
(Instagram Advertisement dated January 29, 2026)



**FIGURE 4**
(Instagram Advertisement dated January 27, 2026)



**FIGURE 5**
(Instagram Advertisement dated January 26, 2026)



**FIGURE 6**
(Instagram Advertisement dated January 21, 2026)



**FIGURE 7.1**
(Instagram Advertisement dated March 11, 2026)



**FIGURE 7.2**
(Instagram Advertisement dated March 11, 2026)



**FIGURE 8.1**
(Instagram Advertisement dated March 13, 2026)



**FIGURE 8.2**
(Instagram Advertisement dated March 13, 2026)



**FIGURE 9.1**
(Instagram Advertisement dated March 16, 2026)



**FIGURE 9.2**
(Instagram Advertisement dated March 16, 2026)



**FIGURE 9.3**
(Instagram Advertisement dated March 16, 2026)



**FIGURE 9.4**
(Instagram Advertisement dated March 16, 2026)



**FIGURE 9.5**
(Instagram Advertisement dated March 16, 2026)



**FIGURE 9.6**
(Instagram Advertisement dated March 16, 2026)



**FIGURE 10**
(Instagram Advertisement dated December 7, 2025)



**FIGURE 11.1**
(Instagram Advertisement dated November 19, 2025)



**FIGURE 11.2**
(Instagram Advertisement dated November 19, 2025)



**FIGURE 12**
(Instagram Advertisement dated February 6, 2026)



**FIGURE 13**
(Instagram Advertisement dated February 15, 2026)



**FIGURE 14**
(Instagram Advertisement dated February 16, 2026)



**FIGURE 15**
(Instagram Advertisement dated March 1, 2026)



**FIGURE 16**
(Instagram Advertisement dated January 21, 2026)



**FIGURE 17**
(Instagram Advertisement dated January 14, 2026)



**FIGURE 18.1**
(Instagram Advertisement dated January 13, 2026)



**FIGURE 18.2**
(Instagram Advertisement dated January 13, 2026)



**FIGURE 18.3**
(Instagram Advertisement dated January 13, 2026)



**FIGURE 18.4**
(Instagram Advertisement dated January 13, 2026)



**FIGURE 19**
(Instagram Advertisement dated February 7, 2026)

# EXHIBIT C



**FIGURE 1**



**FIGURE 2**



**FIGURE 3**



**FIGURE 4**



**FIGURE 5**



**FIGURE 6**



**FIGURE 7**



**FIGURE 8**



**FIGURE 9**



**FIGURE 10**



**FIGURE 11**



**FIGURE 12**



**FIGURE 13**



**FIGURE 14**



**FIGURE 15**



**FIGURE 16**



**FIGURE 17**



**FIGURE 18**



**FIGURE 19**



**FIGURE 20**



**FIGURE 21**



**FIGURE 22**



**FIGURE 23**



**FIGURE 24**



**FIGURE 25**



**FIGURE 26**



**FIGURE 27**



**FIGURE 28**



**FIGURE 29**



**FIGURE 30**



**FIGURE 31**



**FIGURE 32**



**FIGURE 33**



**FIGURE 34**



**FIGURE 35**

*MEDVi Intake Screen Recording*:

https://chimicles.com/medvi-website/

**FIGURE 36**

# EXHIBIT D

*Lilly*

Menu ☰

**Is Mounjaro® (tirzepatide) available as an oral formulation?**

Search Mounjaro (tirzepatide) injection (type in keywords)

[                                                                    ] 🔍

If you wish to report an adverse event or product complaint, please call
**1-800-LILLYRX** (1-800-545-5979)

🔖 **Save page**

# Mounjaro ® (tirzepatide) injection

2.5 mg/5 mg/7.5 mg/10 mg/12.5 mg/15 mg

**Full Prescribing Information**

This information is provided in response to your request. Resources may contain information about doses, uses, formulations and populations different from product labeling. See Prescribing Information above, if applicable.

# Is Mounjaro® (tirzepatide) available as an oral formulation?

Tirzepatide is not available in pill form for oral administration. Tirzepatide is an injectable medicine



**prescribing information.**

**TIRZEPATIDE FORMULATION**

Tirzepatide is not available in pill form for oral administration.[1]

Tirzepatide is an injectable medicine for subcutaneous use. It contains tirzepatide, a once weekly glucose-dependent insulinotropic polypeptide (GIP) and glucagon-like peptide-1 (GLP-1) receptor agonist.[1]

The molecular weight of tirzepatide is 4813.53 daltons.[1] Generally, medicines with a molecular weight greater than 500 daltons are not absorbed orally.

Tirzepatide injection is a clear, colorless to slightly yellow, sterile solution.[1]

**ENCLOSED PRESCRIBING INFORMATION**

MOUNJARO® (tirzepatide) injection, for subcutaneous use, Lilly

**REFERENCE**

1. Mounjaro [package insert]. Indianapolis, IN: Eli Lilly and Company; 2025.

*Date of Last Review: September 23, 2025*

## Are you satisfied with this content?

Yes    No

Can't find what you're looking for? Contact us for answers to your medical questions.



**Terms of Use**

**Privacy Statement**

**Consumer Health Privacy Notice**

**Accessibility Statement**

**Sitemap**

Select a country

| Country ▾ |
| --- |

This site is intended for US Healthcare Professionals only.
4.0.51 02/2026 | GLOOTH00001 04/2015 | © Lilly USA, LLC 2026. All rights reserved.
Product names listed above are trademarks or registered trademarks owned by or licensed to Eli Lilly and
Company, its subsidiaries, or affiliates

 **Your Privacy Choices**
**Cookie Settings**

      





# EXHIBIT E

IN THE MATTER OF:          )
                                      )    **BEFORE THE ALABAMA STATE**

**TRIAD RX INC.**            )      **BOARD OF PHARMACY**
                                       )

**Community Pharmacy**      )       **CASE NO: 19-L-0137**
**Permit Number: 113869**     )

## CONSENT ORDER

**THIS MATTER** comes before the Alabama State Board of Pharmacy (hereinafter referred to as the "Board") on a complaint against Triad Rx Inc. which resulted in the filing of a Statement of Charges and Notice of Hearing ("Statement") alleging violations of the Alabama Pharmacy Practice Act as are more particularly set out in the Statement which is attached hereto as **Exhibit "A."**

Prior to a hearing in this cause, and pursuant to Code of Alabama (1975), § 41-22-12(f), the matters at issue were resolved informally by the parties and the parties negotiated a Consent Order, the terms of which are as follows:

1.     The Board finds that Triad Rx Inc. has violated the provisions of law based upon the conduct set out in Counts One through Six of the Statement.

2.     Triad Rx Inc. shall pay an administrative fine in the amount of Fifteen Thousand Dollars ($15,000.00) within thirty (30) days of the effective date of this Consent Order that being the day the same is signed on behalf of the Board. This payment shall not be subject to discharge in bankruptcy nor shall Triad Rx Inc. attempt to discharge the same.

3.     Triad Rx Inc. expressly waives its rights pursuant to the Alabama Pharmacy Practice Act, the Alabama Administrative Procedure Act and the Alabama Uniform Controlled Substances Act, including but not limited to the Code of Alabama (1975), §34-23-34 and §34-23-92(12), Code of Alabama (1975), §41-22-12 and §40-22-20 and

Code of Alabama (1975), § 20-2-50 et seq., and including but not limited to the opportunity for a hearing before the Board in connection with any charges against it and any judicial review. Triad Rx Inc. further waives any objection to the attorney for the Board preparing, drafting or making this Order, including the waiver of any objection or right pursuant to Code of Alabama (1975), §41-22-18.

4.    By execution of this Consent Order, Triad Rx Inc. hereby releases the Board, its members, agents, representatives, servants and employees from any and all liability, claims, damages, fees or expenses arising out of or made in connection with the matters relating to this Consent Order and Statement.

5.    Triad Rx Inc. acknowledges and agrees that any future violation of the Alabama Pharmacy Practice Act, the laws that regulate the sale and/or dispensing of prescription or legend drugs and/or narcotics or any Rules and regulations of the Alabama State Board of Pharmacy or the pharmacy law or rules of the Board of Pharmacy of another state or any other applicable laws may, upon proof and hearing thereof, result in further disciplinary sanctions against Triad Rx Inc.'s permit, including, but not limited to revocation.

6.    Triad Rx Inc. acknowledges and agrees that it has read this Consent Order and that it fully understands the terms, conditions and contents of the same. Triad Rx Inc. acknowledges and agrees that it voluntarily and of its own free will accepts the terms and conditions set out in this Consent Order and is signing this Consent Order on the advice of their attorney.

DONE this the __7th__ of __July__, 2022.

TRIAD RX INC.

BY: _____

ITS: __PRESIDENT__

_____
Robert F. Jernigan
Attorney for Triad Rx Inc

DONE this the __19__ of __July__, 2022.

ALABAMA STATE BOARD OF PHARMACY

By: _____
Chris Phung, R.Ph., President

By: _____
James S. Ward,
Attorney for the Alabama State
Board of Pharmacy

__OF COUNSEL__:
WARD & COOPER, LLC
2100A Southbridge Parkway
Suite 645
Birmingham, AL  35209
(205) 871-5404

# EXHIBIT "A"

IN THE MATTER OF:                          )
                                           )    **BEFORE THE ALABAMA STATE**
TRIAD RX INC.                              )    **BOARD OF PHARMACY**
                                           )
Community Pharmacy                         )    **CASE NO: 19-L-0137**
Permit Number: 113869                      )

## STATEMENT OF CHARGES AND NOTICE OF HEARING

TO:   Triad Rx Inc.
      26258 Pollard Road
      Daphne, Alabama 36526

Pursuant to the provisions of Code of Alabama (1975), § 34-23-34 and § 34-23-92(12) and Code of Alabama (1975), § 41-22-12, you are hereby notified and requested to appear before the Alabama State Board of Pharmacy (hereinafter referred to as the "Board") on ___July___ __19__ , 2022 at _8:00_ a.m., at the State Board of Pharmacy Conference Room, 111 Village Street, Birmingham, Alabama 35242, and from time to time thereafter as may be required by the Board for the purpose of a hearing to determine why the permit to operate Triad Rx Inc. should not be revoked, suspended or placed on probation or a monetary penalty imposed based upon any or all of the following, to-wit:

### COUNT ONE

Violating Code of Alabama (1975), § 34-23-33(2) in that you violated 503(a) of the FDCA as set out in a Warning Letter dated February 5, 2019 attached hereto as Exhibit "A", to include any or all of the following:

(a)   Using bulk drug substances which were not the subject of an applicable USP or NF monograph, were not components of an FDA approved human

Page 1 of 4

drug and which did not appear on the 503A bulks list. An example of such is set out and described in Section B of the referenced Warning Letter.

(b)    Violations of the FDCA Adulterated Drug Product, eleven (11) examples of the same being set out and described in Section C of the referenced Warning Letter.

(c)    Compounding Unapproved New Drug Products as set out and described in Section C of the referenced Warning Letter.

(d)    Your ineligible drug products compounded were misbranded as set out and described in Section C of the referenced Warning Letter.

The Board alleges that each and every violation is a separate and distinct offense.

## COUNT TWO

Violating Code of Alabama, (1975), § 34-23-33(6) based upon any or all of the allegations of Count One above and/or the deficiencies noted by the FDA in your response to the Warning Letter as set out with particularly in Section D.

## COUNT THREE

Violating Code of Alabama, (1975), § 34-23-33(13) in that you violated Board Rule 680-X-2.22(2)(a) based upon any or all of the allegations of Count One above.

## COUNT FOUR

Violating Code of Alabama, (1975), § 34-23-33(13) in that you violated Board Rule 680-X-2.22(2)(b) based upon any or all of the allegations of Count One above.

## COUNT FIVE

Violating Code of Alabama, (1975), § 34-23-33(13) in that you violated Board Rule 680-X-2.22(2)(d) based upon any or all of the allegations of Count One above.

## COUNT SIX

Violating Code of Alabama, (1975), § 34-23-33(13) in that you violated Board Rule 680-X-2.22(2)(f) based upon any or all of the allegations of Count One above.

Further, pursuant to the provisions of Code of Alabama, (1975), § 20-2-53 and § 41-22-12, you are hereby notified and requested to appear before the Board at the aforesaid time and place and from time to time thereafter as may be requested by the Board for the purpose of a hearing to determine why your registration to manufacture, dispense or distribute controlled substances enumerated in Schedules II, III, IV and V of the Alabama Uniform Controlled Substances Act, Code of Alabama (1975), § 20-2-1, et. seq., issued pursuant to Code of Alabama (1975), § 20-2-52, should not be suspended or revoked in that it is alleged that you have been guilty of the following:

## COUNT SEVEN

Violating Code of Alabama (1975), § 20-2-54(a)(4) by violating the provisions of Code of Alabama (1975), § 34-23-1 et seq., said violation being based upon the allegations contained in any or all of the preceding Counts of this Statement of Charges and Notice of Hearing.

Notice is further given that in the event you are found guilty of the allegations contained in any or all of the preceding Counts contained in this Statement of Charges and Notice of Hearing, the Board may consider in assessing punishment the Consent

Page 3 of 4

Order entered by the Board on September 18, 2018, said document being attached hereto and made a part hereof as Exhibit "B".

At the aforesaid time and place and from time to time thereafter as may be directed by the Board, you may be represented by an attorney, if you so desire, cross-examine all witnesses who testify against you and present such evidence in your own behalf in response to these charges as you consider necessary and appropriate.

Dated this the _____ day of _____, 2022.

ALABAMA STATE BOARD OF PHARMACY

By:    Donna C. Yeatman
       Executive Secretary

# ЕXHIBIT "A"

**WARNING LETTER**

# Triad Rx, Inc

## MARCS-CMS 569659 — FEB 05, 2019

**Recipient:**

Matthew L. McDonald

Owner

Triad Rx, Inc

26258 Pollard Road
Daphne, AL 36526
United States

**Issuing Office:**

Division of Pharmaceutical Quality Operations II

4040 North Central Expressway, Suite 300
Dallas, TX 75204-3128
United States

**February 5, 2019**

**CMS Case #569659**

**WARNING LETTER**

**VIA UPS EXPRESS**

Matthew L. McDonald, Owner Triad Rx, Inc.

26258 Pollard Road

Daphne, AL 36526

Dear Mr. McDonald:

From July 17, 2017, to July 21, 2017, a U.S. Food and Drug Administration (FDA) investigator inspected your facility, Triad Rx, Inc., located at 26258 Pollard Road, Daphne, AL 36526. During the inspection, the investigator noted that drug products you produced failed to meet the conditions of section 503A of the Federal Food, Drug, and Cosmetic Act (FDCA) [21 U.S.C. § 353a] for exemption from certain provisions of the FDCA. The investigator noted serious deficiencies in your practices for producing sterile drug products, which put patients at risk.

FDA issued a Form FDA 483 to your firm on July 21, 2017. FDA acknowledges receipt of your facility's response, dated August 3, 2017. Based on this inspection, it appears that you produced drug products that violate the FDCA.

## A.    Compounded Drug Products Under the FDCA

Section 503A of the FDCA describes the conditions under which human drug products compounded by a licensed pharmacist in a State licensed pharmacy or a Federal facility, or a licensed physician, qualify for exemptions from three sections of the FDCA: compliance with current good manufacturing practices (CGMP) (section 501(a)(2)(B)); labeling with adequate directions for use (section 502(f)(1)); and FDA approval prior to marketing (section 505) [21 U.S.C. §§ 351(a)(2)(B), 352(f)(1) and 355(a)].1 Receipt of valid prescriptions for individually- identified patients is one of the conditions for the exemptions under section 503A.

In addition, for a compounded drug product to qualify for the exemptions under section 503A, bulk drug substances used to compound it must: (I) comply with the standards of an applicable United States Pharmacopeia (USP) or National Formulary (NF) monograph, if a monograph exists, and the USP chapter on pharmacy compounding; (II) if such a monograph does not exist, be components of drugs approved by the Secretary; or (III) if such a monograph does not exist and the drug substance is not a component of a drug approved by the Secretary, appear on a list developed by the Secretary through regulation ("503A bulks list") (section 503A(b)(1)(A)(i) of the FDCA).

## B.    Failure to Meet the Conditions of Section 503A

During the inspection, the FDA investigator noted that drug products produced by your firm failed to meet the conditions of section 503A. For example, the investigator noted your firm compounded drug products using GHRP-2, GHRP-6, and chromium picolinate. Drug products compounded using GHRP-2, GHRP-6, and chromium picolinate are not eligible for the exemptions provided by section 503A(a), because these bulk drug substances are not the subject of an applicable USP or NF monograph, are not a component of an FDA-approved human drug, and do not appear on the 503A bulks list.2

Therefore, you compounded drug products that do not meet the conditions of section 503A and are not eligible for the exemptions in that section from the FDA approval requirement of section 505 of the FDCA, the requirement under section 502(f)(1) of the FDCA that labeling bear adequate directions for use, and the requirement of compliance with CGMP under section 501(a)(2)(B) of the FDCA. In the remainder of this letter, we refer to your drug products that do not qualify for exemptions under section 503A as the "ineligible drug products."

Specific violations are described below.

## C.    Violations of the FDCA Adulterated Drug Products

The FDA investigator noted that drug products intended or expected to be steril. were prepared, packed, or held under insanitary conditions, whereby they may have become contaminated with filth or rendered injurious to health, causing your drug products to be adulterated under section 501(a)(2)(A) of the FDCA. For example:

1. Partially stoppered vials of product intended to be sterile were observed to be exposed to lower than ISO 5 quality air during production while being transferred into the lyophilizer.

2. Personnel were observed conducting aseptic manipulations that blocked the movement of first pass air over and around open vials.

3. The (b)(4) testing of the (b)(4) was not conducted per the manufacturer's specification.

4. The ISO classified areas have difficult to clean, particle-generating, or visibly dirty equipment or surfaces.

5. The media fills were not performed under the most challenging or stressful conditions. Therefore, there is a lack of assurance that your firm can aseptically produce drug products within your facility.

6. You re-used isopropyl alcohol (IPA) bottles containing (b)(4) IPA for disinfecting ISO 5 areas without assurance that the bottles remained sterile after multiple uses and can adequately prevent the spread of contamination in the ISO 5 area.

7. Personnel engaged in aseptic processing were observed with exposed hands and wrists in the ISO 5 area.

8. Cleaning pads or wipes used in the ISO 5 area were not sterile.

9. Personnel were observed touching equipment or other surfaces located outside of the ISO 5 area with gloved hands and then proceeding with aseptic processing in the ISO 5 area without changing or sanitizing gloves.

10. Equipment used for aseptic processing was not disinfected prior to entering the ISO 5 processing area.

11. Your firm's preparation and contact time of the sporicidal agent used in the cleanrooms and ISO 5 areas was not adequate for its intended use.

**Unapproved New Drug Products**

You do not have any FDA-approved applications on file for the ineligible drug products that you compounded.[3] Under sections 505(a) and 301(d) of the FDCA [21 U.S.C. § 331(d)], a new drug may not be introduced into or delivered for introduction into interstate commerce unless an application approved by FDA under section 505 of the FDCA is in effect for the drug. Marketing of these products, or other applicable products, without an approved application violates these provisions of the FDCA.

**Misbranded Drug Products**

The ineligible drug products you compounded are intended for conditions not amenable to self- diagnosis and treatment by individuals who are not medical practitioners; therefore, adequate directions for use cannot be written so that a layman can use these products safely for their intended uses. Consequently, their labeling fails to bear adequate directions for their intended uses.[4] Accordingly, these ineligible drug products are misbranded under section 502(f)(1) of the FDCA. The introduction or delivery for introduction into interstate commerce of these products therefore violates section 301(a) of the FDCA. It is also a prohibited act under section 301(k) of the FDCA to do any act with respect to a drug, if such act is done while the drug is held for sale after shipment in interstate commerce and results in the drug being misbranded.

**D.    Corrective Actions**

We have reviewed your firm's response to the Form FDA 483.

Regarding the insanitary condition observations in the Form FDA 483, we cannot fully evaluate the adequacy of the following corrective actions described in your response because you did not include sufficient information or supporting documentation:

1. In your response, you indicated that you have "consulted with **(b)(4)**" and provided a copy of the diagram of the proposed cleanroom layout where "the ISO 5 area created by **(b)(4)** to allow direct access to the lyophilizer's chamber and controls without any unsealed product leaving the ISO 5 environment." However, you did not provide any detailed plans of construction or timeframe regarding the facility modification of the ISO 5 or the ISO 7 areas. Furthermore, it is unclear if your firm will continue to produce lyophilized product while construction is underway.

2. In your response, you indicated that you have revised "the drug formulation worksheet" to reflect "the need to keep unfilled vials covered while **(b)(4)** in order to minimize the risk of unclean air flowing over the vials." However, you did not provide "the drug formulation worksheet" or any other documents reflecting the revised procedures to support this corrective action.

3. In your response, you indicated that you can modify the cleanroom "**(b)(4)** the area where the lyophilizer is located" and the "exposed part" of the lyophilizer "will be located **(b)(4)**, limiting exposure to any part of the room." However, you did not provide any detailed plans or timeline of construction within the ISO 5 or the ISO 7 areas. Furthermore, it is unclear if your firm evaluated whether the "**(b)(4)**" is considered a difficult to clean surface and whether a "**(b)(4)**" between an ISO 5 area and unclassified space could potentially introduce contamination directly in the aseptic processing areas.

4. In your response, you indicated that you have revised your media fill procedure which includes a "more complex process with **(b)(4)** and **(b)(4)** the lyophilizer". However, your revised media fill procedures reference only **(b)(4)** which do not simulate production operations incorporating the worst-case activities and conditions.

5. In your response, you indicated that you have purchased "sterile cleaning pads" for use in the ISO 5 area to replace the non-sterile wipes. However, you did not provide a receipt or a certificate of analysis of the sterile "cleaning pads" purchased or the starting date of their use within your facility.

In addition, our review of your batch records collected during the inspection revealed that your **(b)(4)** testing for your L-Carnitine 250mg/ml injectable product was performed for **(b)(4)** with volumes of **(b)(4)** and **(b)(4)**, but the batch quantity made was **(b)(4)**. Therefore, the **(b)(4)** volume is not adequate for the quantity of drug product **(b)(4)**.

Please be aware that section 501(a)(2)(A) of the FDCA concerning insanitary conditions applies regardless of whether drug products you compound meet the conditions of section 503A, including that bulk drug substances used to compound must: (I) comply with the standards of an applicable USP or NF monograph, if a monograph exists, and the USP chapter on pharmacy compounding; (II) if such a monograph does not exist, be components of drugs approved by the Secretary; or (III) if such a monograph does not exist and the drug substance is not a component of a drug approved by the Secretary, appear on 503A bulks list.

In addition, regarding issues related to the conditions of section 503A of the FDCA, your corrective actions appear partially adequate. In your response you state: "Triad's P&Ps have been updated to require **(b)(4)** reviews of FDA publications to ensure that no [nominated] article in 503A Categories 2 (Bulk Drug Substances that Raise Significant Safety Risks) or 3 (Bulk Drug Substances Nominated Without Adequate Support including, without limitation, GHRP-2 or -6) is inadvertently included as an active ingredient in compounded products." However, you did not state how your firm will ensure that other ineligible bulk drug substances that do not appear in the categories you referenced in your letter would not be used in compounding. An example bulk drug substance that is not the subject of an applicable USP or NF monograph, a component of an FDA-approved drug, and does not appear in category 2 or 3 of the interim 503A bulks list is chromium picolinate.

Should you continue to compound and distribute drug products that do not meet the conditions of section 503A, the compounding and distribution of such drugs would be subject to the new drug approval requirement, the requirement to label drug products with adequate directions for use, and the drug CGMP regulations. Before doing so, you must comply with the requirements of section 505, 502(f)(1), and 501(a)(2)(B).

In addition to the issues discussed above, you should note that CGMP requires the implementation of quality oversight and controls over the manufacture of drugs, including the safety of raw materials, materials used in drug manufacturing, and finished drug products. *See* section 501 of the FDCA. If you choose to contract with a laboratory to perform some functions required by CGMP, it is essential that you select a qualified contractor and that you maintain sufficient oversight of the contractor's operations to ensure that it is fully CGMP compliant. Regardless of whether you rely on a contract facility, you are responsible for assuring that drugs you produce are neither adulterated nor misbranded. [*See* 21 CFR 210.1(b), 21 CFR 200.10(b)].

FDA strongly recommends that your management undertake a comprehensive assessment of operations, including facility design, procedures, personnel, processes, maintenance, materials, and systems. In particular, this review should assess your aseptic processing operations. A third party consultant with relevant sterile drug manufacturing expertise should assist you in conducting this comprehensive evaluation.

## E.    Conclusion

The violations cited in this letter are not intended to be an all-inclusive statement of violations at your facility. You are responsible for investigating and determining the causes of the violations identified above and for preventing their recurrence or the occurrence of other violations. It is your responsibility to ensure that your firm complies with all requirements of federal law, including FDA regulations.

You should take prompt action to correct the violations cited in this letter. Failure to promptly correct these violations may result in legal action without further notice, including, without limitation, seizure and injunction.

Within fifteen working days of receipt of this letter, please notify this office in writing of the specific steps that you have taken to correct violations. Please include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation. If you do not believe that the products discussed above are in violation of the FDCA, include your reasoning and any supporting information for our consideration. If you cannot complete corrective action within 15 working days, state the reason for the delay and the time within which you will complete the correction.

Your written notification should refer to the Warning Letter Number above (**CMS Case #569659**). Please address your reply to John W. Diehl, Director, Compliance Branch, at the FDA address provided on bottom of first page of this letter. Additionally, please submit a signed copy of your response on your firm's letterhead via

e-mail to ORAPHARM2_Response.@fda.hhs.gov. (mailto:ORAPHARM2_Re..nses@fda.hhs.gov)

If you have questions regarding the contents of this letter, please contact Rebecca A. Asente, Compliance Officer, via (504) 846-6104 or Rebecca.asente@fda.hhs.gov. (mailto:Rebecca.asente@fda.hhs.gov)

Sincerely,

/S/

Monica R. Maxwell

Program Division Director

Office of Pharmaceutical Quality Operations,

Division II

CC:    Susan Alverson, Executive Secretary

Alabama Board of Pharmacy

P.O. Box 381988

Birmingham, AL 35238-1988

---

*1* We remind you that there are conditions other than those discussed in this letter that must be satisfied to qualify for the exemptions in section 503A of the FDCA.

*2* On June 9, 2016, FDA issued a final guidance titled, *Interim Policy on Compounding Using Bulk Drug Substances Under Section 503A of the Federal Food, Drug, and Cosmetic Act.* This guidance describes FDA's interim regulatory policy for State-licensed pharmacies, Federal facilities, and licensed physicians that compound human drug products using bulk drug substances that do not otherwise meet the conditions of section 503A(b)(1)(A)(i) while the 503A bulks list is being developed. Specifically, the guidance sets out the conditions under which FDA does not intend to take action against a State-licensed pharmacy, Federal facility, or licensed physician for compounding a drug product using a bulk drug substance that is not the subject of an applicable USP or NF monograph or a component of an FDA-approved drug, until the substance is identified in a final rule as included or not included on the 503A bulks list. These conditions include that the substance may be eligible for inclusion on the 503A bulks list, was nominated with adequate support for FDA to evaluate it, and has not been identified by FDA as a substance that appears to present significant safety risks pending further evaluation. GHRP-2 andGHRP-6 were nominated, but not with adequate support for FDA to evaluate these substances. Chromium picolinate was not nominated. For additional information, see the guidance at http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/UCM469120.pdf. (http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/UCM469120.pdf)

*3* The specific products made by y    firm are drugs within the meaning of s     on 201(g) of the Act, [21 U.S.C. § 321(g)] because they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of diseases and/or because they are intended to affect the structure or any function of the body. Further, they are "new drugs" within the meaning of section 201(p) [21 U.S.C. 321(p)] of the FDCA because they are not generally recognized as safe and effective for their labeled uses.

*4* Your ineligible drug products are not exempted from the requirements of section 502(f)(1) of the FDCA by regulations issued by the FDA (see, e.g., 21 CFR 201.115).

�𝗚 More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)

# ⌐XHIBIT "B"

IN THE MATTER OF:        )    BEFORE THE ALABAMA STATE
                         )
TRIAD RX INC.            )    BOARD OF PHARMACY
                         )
Permit No. 113869        )    CASE NO: 18-L-0066
                         )

## CONSENT ORDER

**THIS MATTER** comes before the Alabama State Board of Pharmacy (hereinafter referred to as the "Board") on a complaint against Triad Rx Inc. listed above (hereinafter referred to as "Triad") which resulted in the filing of a Statement of Charges and Notice of Hearing ("Statement") alleging violations of the Alabama Pharmacy Practice Act. These allegations with particularity are set out in the Statement, which is attached hereto as **Exhibit "A."**

Prior to a hearing in this cause, and pursuant to <u>Code of Alabama</u> (1975) §41-22-12(f), the Board through its counsel and Triad, through its counsel, engaged in negotiations and as a result, the matters at issue were resolved informally by the parties who agreed to the entry of this Consent Order which includes the following terms:

1.    The Board finds Triad has violated the provisions of the Alabama Pharmacy Practice Act based upon the conduct set forth in Counts One and Two of the Statement. Count Three shall be dismissed with prejudice.

2.    Triad shall pay an administrative fine in the amount of Three Thousand Dollars ($3,000.00) within thirty (30) days from the effective date of the Consent Order, which is the date it is signed on behalf of the Board. This payment shall not be subject to discharge in bankruptcy nor shall Triad attempt to discharge the same.

3.    Triad expressly waives its rights pursuant to the Alabama Pharmacy

Practice Act, the Alabama Administrative Procedures Act and the Alabama Uniform Controlled Substances Act, including but not limited to the Code of Alabama (1975), §34-23-34 and §34-23-92(12), Code of Alabama (1975), §41-22-12 and §40-22-20 and Code of Alabama (1975), § 20-2-50 et seq., and including but not limited to the opportunity for a hearing before the Board in connection with any charges against it and any judicial review. Triad further waives any objection to the attorney for the Board preparing, drafting or making this Order, including the waiver of any objection or right pursuant to Code of Alabama (1975), §41-22-18.

4.    That Triad agrees that any future violation of the Alabama Pharmacy Practice Act, the rules and regulations of the Alabama State Board of Pharmacy or any other applicable laws may, upon proof and hearing thereof, result in further disciplinary sanctions against its license.

5.    By execution of this Consent Order, Triad hereby releases the Board, its members, agents, representatives, servants and employees from any and all liability, claims, damages, fees or expenses arising out of or made in connection with the matters relating to this Consent Order and Statement.

6.    Triad acknowledges and agrees that it has read this Consent Order and that it fully understands the terms, conditions and contents of the same. Triad acknowledges and agrees that it voluntarily and of its own free will accepts the terms and conditions set out in this Consent Order and is signing this Consent Order on the advice of its attorney.

Page 2 of 3

DONE this the ____10th____ day of ___September___, 2018.

> Triad Rx Inc.
>
> BY: _____
> ITS: _____
>
>
> _____
> Robert F. Jernigan, Attorney for
> Triad Rx Inc.

DONE this the _____ day of _____, 2018.

> ALABAMA STATE BOARD OF PHARMACY
>
> By: _____
> David Darby, R.Ph., President
>
>
> _____
> James S. Ward,
> Attorney for the Alabama State
> Board of Pharmacy

**OF COUNSEL**:
WARD & COOPER, LLC
2100A Southbridge Parkway
Suite 580
Birmingham, AL  35209
(205) 871-5404

# EXHIBIT "A"

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | BEFORE THE ALABAMA STATE |
| | ) | |
| TRIAD RX INC. | ) | BOARD OF PHARMACY |
| | ) | |
| Permit No. 113869 | ) | CASE NO: 18-L-0066 |
| | ) | |

## STATEMENT OF CHARGES AND NOTICE OF HEARING

TO:    Triad Rx Inc.
       26258 Pollard Road
       Daphne, Alabama 36526

Pursuant to the provisions of Code of Alabama (1975), § 34-23-34 and § 34-23-92(12) and Code of Alabama (1975), § 41-22-12, you are hereby notified and requested to appear before the Alabama State Board of Pharmacy (hereinafter referred to as the "Board") on _September_ _18_, 2018 at _8:00a_m., at the State Board of Pharmacy Conference Room, 111 Village Street, Birmingham, Alabama 35242, and from time to time thereafter as may be required by the Board for the purpose of a hearing to determine why the permit to operate Triad Rx Inc. should not be revoked, suspended or placed on probation or a monetary penalty imposed in that it is alleged that Triad Rx Inc. has been guilty of the following, to-wit:

## COUNT ONE

Violating Code of Alabama (1975), § 34-23-33(2) based upon the entry of an Agreed Board Order by the Texas State Board of Pharmacy on May 1, 2018 attached hereto as Exhibit "A" and/or operating a non-resident sterile compounding pharmacy in violation of Texas rules in that the pharmacy was not under the supervision of a pharmacist in charge licensed as a pharmacist in Texas as more fully set out in the

Page 1 of 3

above referenced Order.

## COUNT TWO

Violating Code of Alabama (1975), § 34-23-33(13) in that you violated Board Rule 680-X-2.22(2)(d) based upon any or all of the allegations of Count One above.

## COUNT THREE

Violating Code of Alabama (1975), § 34-23-33(6) based upon any or all of the allegations of the preceding Counts.

Further, pursuant to the provisions of Code of Alabama, (1975), § 20-2-53 and § 41-22-12, you are hereby notified and requested to appear before the Board at the aforesaid time and place and from time to time thereafter as may be requested by the Board for the purpose of a hearing to determine why your registration to manufacture, dispense or distribute controlled substances enumerated in Schedules II, III, IV and V of the Alabama Uniform Controlled Substances Act, Code of Alabama (1975), § 20-2-1, et. seq., issued pursuant to Code of Alabama (1975), § 20-2-52, should not be suspended or revoked in that it is alleged that you have been guilty of the following:

## COUNT FOUR

Violating Code of Alabama (1975), § 20-2-54(a)(4) by violating the provisions of Code of Alabama (1975), § 34-23-1 et seq., said violation being based upon the allegations contained in any or all of the preceding Counts of this Statement of Charges and Notice of Hearing.

At the aforesaid time and place and from time to time thereafter as may be directed by the Board, you may be represented by an attorney, if you so desire, cross-

Page 2 of 3

examine all witnesses who testify against you and present such evidence in your own behalf in response to these charges as you consider necessary and appropriate.

Dated this the _16_ day of _July_, 2018.

ALABAMA STATE BOARD OF PHARMACY

By: Susan Alverson
Secretary

Page 3 of 3

# EXHIBIT "A"

### *AGREED BOARD ORDER #K-17-055*

RE:   IN THE MATTER OF            BEFORE THE TEXAS STATE
      TRIAD RX, INC.              BOARD OF PHARMACY
      (PHARMACY LICENSE #_____)

On the day _____ to be scheduled by the Texas State Board of Pharmacy (Board) the matter of pharmacy license number _____ issued to Triad Rx, Inc. (Respondent), 26258 Pollard Road, _____, Alabama _____.

By letter dated March 8, 2018, the Board gave preliminary notice to Respondent of its intent to take disciplinary action. This action was taken as a result of an investigation which produced evidence indicating that Respondent may have violated:

Sections _____ and _____ (a)(3) of the Texas Pharmacy Act, Tex. Occ. Code Ann. §§ _____ (2015)), and

Section 291.__ of the Texas Pharmacy Board Rules, 22 Tex. Admin. Code (2017), in that Respondent:

### COUNT

On or about September 1, 2016, through on or about February 22, 2017, Triad Rx, Inc., 26258 Pollard Road, _____ pharmacy license #_____ was engaged in the operation of a non-resident pharmacy _____ the supervision of a pharmacist-in-charge licensed as a pharmacist in Texas.

By letter dated March 8, 2018, Respondent was notified that the matters previously set out in this Order could be disposed of without the scheduling of an informal conference or a formal administrative hearing. By signing this Order, Matt McDonald, Corporate President, on behalf of Respondent _____ the truth of the matters previously set out in this Order, and agrees _____ jurisdiction in this matter, and waives the right to informal conference, notice and _____ administrative hearing, and judicial review of this Order.

The parties acknowledge that this Order resolves the allegations set forth herein, and agree to the terms and conditions set forth in the ORDER OF THE BOARD below.

*Agreed Board Order #K-17-055*
*Trini..., Inc.*
*Page 2*



**ORDER OF THE BOARD**

THEREFORE, ████████████████████, the Board does hereby ORDER that:

(1) R████████████████████████████ one thousand dollars ($1,000) due one hundred twenty (120) days █████████████ of this ████.

(2) R████████████████████████████████ a violation and will be █████████████████████████████████ of this Order are ████████████████████████ in title 5, subch███ J (2017), and Texas ████████████████████ in 16 Tex. Admin. Code §.005(2018).

Agreed Board Order #K-17-035
Trina Rx, Inc.
Page 3

And it is so ORDERED.

THIS ORDER IS A PUBLIC RECORD.

SIGNED AND ENTERED ON THIS __1st__ day of May_____, __2018____.



_____ R.Ph
_____, BOARD OF PHARMACY

ATTEST:



_____
Allison _____, ____, R.S.
Executive _____
Texas State Board of Pharmacy

APPROVED AS TO FORM AND AGREED TO:



_____
Mr. _____
Cp_____

APPROVED AS TO FORM:

_____
_____, General Counsel
Texas State Board of Pharmacy