# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DARBY DAY, individually and on behalf of all others similarly situated, )
)
)
Plaintiff, )
)
v. )
)
OPENLOOP HEALTH INC., TRIAD RX )
BUYER LLC and TRIAD RX, INC., )
)
)
Defendants. )

C.A. No. 1:25-cv-01418-GBW

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S PUTATIVE CLASS ACTION COMPLAINT, OR, IN THE ALTERNATIVE,
TO COMPEL ARBITRATION AND ENFORCE CLASS ACTION WAIVER**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

      A.    Plaintiff Cannot Escape § 337(a). ............................................................ 2

            1.    Plaintiff's "Ineffective Drug" Theory Is FDCA Enforcement
                  in Disguise ...................................................................................... 2

            2.    Section 337(a) Bars Plaintiff's State Law and RICO Claims. .................... 4

            3.    Stripped of the FDCA, Plaintiff's Claims Fail for Lack of
                  Plausibility ..................................................................................... 10

      B.    Plaintiff Has Failed to Set Out the Required Elements of His RICO
            Claim .................................................................................................. 12

            1.    Plaintiff Fails to Establish RICO Standing. ............................................. 12

            2.    Plaintiff Has Not Established a RICO Enterprise. .................................... 15

            3.    Plaintiff's RICO Conspiracy Claim Fails ................................................ 15

      C.    Plaintiff's Fraud Allegations Fail to Satisfy Rule 9(b). ........................... 16

            1.    Plaintiff's Complaint Failed to Plead Fraud. ........................................... 16

            2.    Plaintiff Fails to Allege the Falsity of Specific Statements at Issue. ........ 19

      D.    Plaintiffs' Opposition Fails to Address the State Law Claims' Deficiencies ....... 21

            1.    Rule 23 Does Not Override the State Class Action Bars at Issue ............. 21

            2.    Plaintiff Cannot Establish Standing in States Where He Suffered
                  No Injury ....................................................................................... 22

      E.    Plaintiff Has Failed to Establish Standing for Injunctive Relief. ........................ 22

      F.    Plaintiff Cannot Evade the Arbitration Clause and Class Action Waiver ............ 23

III.  CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  804 F.3d 633 (3d Cir. 2015)...................................................................................................14

*Azurity Pharmaceuticals, Inc. v. Edge Pharma, LLC*,
  45 F.4th 479 (1st Cir. 2022)...............................................................................................5, 6

*Berk v. Choy*,
  607 U.S. __, 146 S. Ct 546 (2026)................................................................................. 21-22

*Bloomsybox.com, LLC v. Userway, Inc.*,
  No. 24-844, 2026 WL 412716 (D. Del. Feb. 13, 2026),
  *R. & R. adopted*, No. 24-844, 2026 WL 585189 (D. Del. Mar. 2, 2026) ................................23

*Brantley v. Republic Mortg. Ins. Co.*,
  424 F.3d 392 (4th Cir. 2005) ...............................................................................................24

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008)................................................................................................... 13-14

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001)............................................................................................... *passim*

*Caldiero v. Missouri Higher Educ. Loan Auth.*,
  No. 24-0315, 2025 WL 979002 (M.D. Pa. Mar. 31, 2025) .....................................................17

*Carson v. HP Inc.*,
  750 F. Supp. 3d 376 (D. Del. 2024)......................................................................................23

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988)..................................................................................................16

*Conaway v. McAfee-Garner*,
  No. 19-619, 2020 WL 6445895 (D. Del. Nov. 3, 2020)..........................................................16

*Davidson v. Sprout Foods, Inc.*,
  106 F.4th 842 (9th Cir. 2024) ........................................................................................... 9-10

*Diebler v. SanMedica Int'l, LLC*,
  488 F. Supp. 3d 169 (D.N.J. 2020) .......................................................................................13

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
  784 F. Supp. 2d 508 (D.N.J. 2011) .......................................................................................15

*Eli Lilly & Co. v. Adonis Health, Inc. d/b/a Henry Meds*,
No. 25-3536, 2025 WL 2721684 (N.D. Cal. Sep. 24, 2025) ...................................... 12-13, 20

*Hightower v. GMRI, Inc.*,
272 F.3d 239 (4th Cir. 2001) ..................................................................................24

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
206 F.3d 411 (4th Cir. 2000) ..................................................................................24

*Johnston County, N.C. v. R.N. Rouse & Co.*,
414 S.E.2d 30 (N.C. 1992)......................................................................................24

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004)........................................................................15, 17, 19

*Maio v. Aetna, Inc.*,
221 F.3d 472 (3d Cir. 2000)....................................................................................11

*Markoff v. Athena Cosmetics, Inc.*,
764 F. Supp. 3d 733 (N.D. Ill. 2025) .........................................................................9

*McNair v. Synapse Grp. Inc.*,
672 F.3d 213 (3d Cir. 2012)....................................................................................23

*MS Dealer Serv. Corp. v. Franklin*,
177 F.3d 942 (11th Cir. 1999) ................................................................................24

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
No. 04-10739, 2011 WL 3852254 (D. Mass. Aug. 13, 2011) ...................................8

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
712 F.3d 21 (1st Cir. 2013)......................................................................................14

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
No. 06-5774, 2009 WL 2043604 (D.N.J. July 10, 2009) .........................................12

*Painters & Allied Trades Dist. Council 82 Health Care Fund
v. Takeda Pharms. Co.*,
943 F.3d 1243 (9th Cir. 2019) ................................................................................14

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014)...................................................................................................5

*Prudential Ins. Co. of Am. v. Credit Suisse Sec. (USA) LLC*,
No. 12-7242, 2013 WL 5467093 (D.N.J. Sept. 30, 2013).......................................17

*Rikos v. P&G*,
799 F.3d 497 (6th Cir. 2015) ....................................................................................8

iii

*SBC Interactive v. Corporate Media Partners*,
714 A.2d 758 (Del. 1998) ..................................................................................24

*Scanlon v. Medtronic Sofamor Danek USA Inc.*,
61 F. Supp. 3d 403 (D. Del. 2014)......................................................................6

*Serrano v. Campbell Soup Co.*,
773 F. Supp. 3d 127 (D.N.J. 2025) .............................................................22, 23

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).........................................................................................23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................23

*Twardzik v. HP Inc.*,
No. 21-396, 2022 WL 606092 (D. Del. Jan. 25, 2022),
*aff'd*, No. 22-2650, 2023 WL 5770999 (3d Cir. Sept. 7, 2023)...........................23

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*,
No. 2037-N, 2006 WL 2473665 (Del. Ch. Aug. 22, 2006) ...................................24

*Young v. Experian Info. Sols., Inc.*,
119 F.4th 314 (3d Cir. 2024) .............................................................................25

**Statutes**

RICO, 18 U.S.C. § 1961 & 1962 ...................................................................... *passim*

28 U.S.C. § 2072..............................................................................................22

FDCA, 21 U.S.C.
§ 301(d)............................................................................................................2
§ 337(a) .................................................................................................... *passim*
§ 503A..................................................................................................... *passim*
§ 505.............................................................................................................2, 9
§ 505(a) and 301(d)...........................................................................................2

Lanham Act...................................................................................................5, 6

Rules Enabling Act, 28 U.S.C. § 2072 ................................................................22

**Rules**

Rule
9(b)..................................................................................................16, 17, 19

## I.      <u>INTRODUCTION</u>

Plaintiff's opposition brief is remarkable, but not for the reasons Plaintiff might hope. In continuing its ill-fated quest to turn a single disappointed-consumer anecdote into viable nationwide RICO and consumer fraud claims, Plaintiff doubles down by impermissibly trying to add new facts via briefing that are not in his Complaint. This Court should reject Plaintiff's gambit.

On the merits, beyond the inescapable conclusion that compounding is legal, any purported FDCA violation is simply not Plaintiff's to police. As Defendants' opening brief explained (despite Plaintiff's odd argument that an argument spanning five pages of Defendants' opening brief was "waived"), § 337(a) reserves Food, Drug, and Cosmetic Act ("FDCA") enforcement exclusively to FDA, not private parties. Because Plaintiff's entire Complaint, under every attempt at re-packaging Plaintiff tries, essentially claims oral tirzepatide is ineffective because it lacks FDA approval, this lawsuit is barred by § 337(a). *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001). Even under governing FDA guidance, a doctor ordering a prescription is authorized to change the route of administration from injectable to oral; doctors do so every day across this country, as explicitly anticipated, expected, and regulated by FDA.

Plaintiff protests that he is not trying to play FDA, but is instead relying on the "scientific certainty" that oral tirzepatide does not work. But his protest falls flat—the supposed "scientific certainty" upon which he relies is the ***absence*** of evidence. Plaintiff's theory is that oral tirzepatide is deceptive ***because*** it lacks FDA approval and the accompanying clinical studies. A plaintiff cannot use a lack of substantiation to demonstrate fraud.

Independently, Plaintiff's claims are not adequately pled. Strip away the FDCA-derived premise that oral tirzepatide is ineffective because it lacks FDA approval, and what remains is Plaintiff used a lawfully compounded prescription medication for approximately a week, perceived no immediate effects, stopped taking it, and canceled his subscription. That is not a factual

predicate for any legal claim. As to Defendants' request to send this case to single-plaintiff arbitration, Plaintiff purposefully misapplies the burdens for equitable estoppel. If Plaintiff's claims are not dismissed, the parties should proceed to a brief period of discovery to confirm the validity of the arbitration and class action provisions in Plaintiff/MEDVi agreement.

## II.    ARGUMENT

### A.    Plaintiff Cannot Escape § 337(a).

Plaintiff's opposition attempts to recast this case as a conventional consumer-fraud action. It is not. Every one of Plaintiff's claims depends on a judicial determination that Defendants violated the FDCA. Because Congress vested exclusive authority to enforce those requirements in the federal government, all of Plaintiff's claims are barred under § 337(a) and *Buckman*.

#### 1.    Plaintiff's "Ineffective Drug" Theory Is FDCA Enforcement in Disguise.

Plaintiff attempts to avoid § 337(a) by asserting that his claims are independent of the FDCA and do not seek to enforce § 503A. D.I. 24 at 11-12. Those disclaimers, however, collapse under Plaintiff's own pleading. From start to finish, the Complaint defines the alleged fraud by reference to quintessential FDCA compliance. The Complaint repeatedly alleges that oral tirzepatide is a "new drug" that is unapproved by FDA; that no approved applications pursuant to section 505 of the FDCA are in effect; and that Defendants' conduct "violates FDCA sections 505(a) and 301(d)." D.I. 1 ¶¶ 186-88, 221-23. Plaintiff expressly invokes the FDCA's new-drug approval framework as the very predicate for supposed liability. In other words, Plaintiff seeks to enforce federal drug approval requirements—precisely what § 337(a) forbids. Plaintiff's criticism that Defendant invoke an FDCA "regulatory thicket" (D.I. 24 at 2) only underscores the point— Plaintiff's own Complaint invokes and depends upon the FDCA's regulatory framework. Having done so, Plaintiff pleads himself out of court by virtue of § 337(a).

FDCA dependence likewise permeates Plaintiff's factual theory. The Complaint repeatedly

2

emphasizes that tirzepatide is FDA-approved only as an injectable; that "no FDA approved method exists" for oral delivery; and that Defendants "bypass[ed]" FDA review and "regulatory safeguards." D.I. 1 ¶¶ 2, 4, 39, 46-47, 56-57, 66-68, 186-88. Most tellingly, Plaintiff repeatedly asserts that it is a "***scientific certainty***" that oral tirzepatide "is not pharmacologically effective." D.I. 24 at 1-2 (citing D.I. 1 ¶¶ 39, 42, 46-47, 55, 90); *id.* at 1-2 ("[I]t is a scientific certainty that Defendants' Oral Tirzapatide is not a pharmacologically effective weight-loss drug" and "Oral Tirzepatide is not equivalent to any FDA-approved weight-loss drug."). But that claimed "certainty" is not derived from empirical testing of oral tirzepatide. Instead, this supposed "certainty' is derived from the ***absence*** of FDA approval and approval level clinical studies—requirements Congress did not impose on compounded drugs. Plaintiff's theory therefore "exists solely by virtue of" the FDCA's premarket approval and is therefore barred by § 337(a). *Buckman*, 531 U.S. at 353. It cannot be salvaged by relabeling alleged FDCA noncompliance as "consumer fraud."

A review of the specific allegations Plaintiff relies on makes that regulatory dependence unmistakable. In D.I. 1 ¶¶ 39, 42, 46-47, and 55, Plaintiff repeatedly asserts that oral tirzepatide is scientifically ineffective, yet cites no affirmative scientific evidence testing oral tirzepatide itself. Instead, he opines—based on tirzepatide's molecular size—that the drug has "traditionally been administered by subcutaneous injection" (D.I. 1 ¶ 39), and broadly references purported "barriers" to oral peptide delivery (D.I. 1 ¶ 42). While the Complaint is replete with scientific-sounding citations, the sources Plaintiff relies on do not evaluate oral tirzepatide at all. Instead, he cites to clinical trial summaries and reviews of clinical trials conducted for FDA-approved drugs—Eli Lilly's FDA drug trials for its injectable tirzepatide (SURMOUNT and SURPASS) and Novo Nordisk's FDA drug trials for its injectable and oral semaglutide tablets (PIONEER). D.I. 1 ¶ 42

3

nn.80-86. Lilly and Novo conducted those studies under FDA-mandated protocols designed to support new drug approval applications for injectable drugs; they were not designed to test (and therefore do not test) whether oral tirzepatide is pharmacologically effective. Plaintiff's additional assertion that pharmaceutical companies have spent billions developing other FDA-approved drugs (D.I. 1 ¶ 55) is, at best, an inference—not scientific certainty. In sum, Plaintiff alleges ineffectiveness because FDA has not ever been asked to approve oral tirzepatide, and thus has never been presented with the clinical studies that accompany a such a request.

In D.I. 1 ¶¶ 90-91, Plaintiff additionally alleges that the oral tirzepatide he received was made with L-Carnitine and Vitamin B12, and claims he experienced no therapeutic effects after "more than a week." This anecdote does not plausibly allege scientific impossibility. Plaintiff's "scientific certainty" refrain merely restates the regulatory conclusion underlying all of its claims: because oral tirzepatide has not undergone the clinical trials needed for FDA new drug approval, it must not work. Determining liability would require a court to decide whether Defendants violated the FDCA's new drug approval regime and § 503A's compounding framework, tasks Congress reserved exclusively to the FDA. Section 337(a) forecloses private enforcement of those requirements, and all of Plaintiff's state law and RICO claims should be dismissed.

### 2. Section 337(a) Bars Plaintiff's State Law and RICO Claims.

Plaintiff advances six purported reasons why § 337(a) does not bar his claims.[1] Each reason fails, either because it mischaracterizes Defendants' argument or relies on authority addressing a fundamentally different legal theory. This is not a case where the court must resolve an express

---

[1] Plaintiff's suggestion that Defendants waived preemption by failing to "develop" it is baseless. Defendants squarely raised § 337(a) and *Buckman* preemption in their opening brief, explained that each of Plaintiff's claims depends on alleged FDCA violations, and cited binding authority holding that such claims are barred. D.I. 18 at 10-14. Nothing more is required for dismissal. Nor does Plaintiff identify any authority requiring defendants to brief preemption seriatim for each separate claim where, as here, the same FDCA-dependent defect applies to all of them.

conflict between two federal statutes (preclusion) because RICO does not stand alone, but instead depends entirely on the existence of qualifying predicate acts. 18 U.S.C. § 1961 & 1962. When the only alleged predicates are FDCA violations, the RICO claim is nothing more than a repackaged attempt at private FDCA enforcement—precisely what § 337(a) and *Buckman* forbid.

First, Plaintiff relies heavily on *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014), and *Azurity Pharmaceuticals, Inc. v. Edge Pharma, LLC*, 45 F.4th 479 (1st Cir. 2022), for the proposition that § 337(a) does not bar claims that merely "touch on" FDCA-regulated conduct. D.I. 24 at 12. But that framing misunderstands both Defendants' arguments and those cases. *Pom Wonderful* addressed a narrow issue: whether the FDCA implicitly precludes a private right of action created by another federal statute, the Lanham Act, for misleading labeling (marketing juice as pomegranate blueberry when it contained only trace amounts of those juices). 573 U.S. at 106-08. The defendant argued that because FDA regulates food labeling, the FDCA displaced the Lanham Act claim. *Id*. at 108-09. The Supreme Court disagreed, holding that Congress did not intend the FDCA to preclude Lanham Act claims because the two statutes serve complementary— but distinct—federal purposes and feature separate enforcement mechanisms. *Id*. at 109, 115-17.

Crucially, the Court's holding was expressly limited: § 337(a) "does not address, or refer to, other federal statutes or the preclusion thereof." *Id*. at 109. The case thus turned on statutory interpretation between two federal laws, each enacted by Congress and each carrying its own express cause of action. *Pom Wonderful* did not involve state consumer protection statutes, did not involve private enforcement of the FDCA itself and did not approve using FDCA compliance as the substantive element of liability under a RICO claim. To the contrary, the Court reaffirmed that FDCA enforcement remains with FDA, while the Lanham Act operates independently to protect competitors from unfair competition. *Id.* at 114-115.

5

So too in *Azurity*, where the First Circuit permitted a Lanham Act claim by a pharmaceutical competitor alleging that the defendant falsely represented its compounded drug as FDCA-compliant. *Azurity*, 45 F.4th at 500-05. There, the court carefully limited its holding to situations where the plaintiff alleges an affirmative misrepresentation of compliance, not where a court is asked to decide in the first instance whether the FDCA was violated. *Id*. at 502-505. The Lanham Act claim survived precisely because it turned on deception in the marketplace—whether the defendant falsely held itself out as meeting statutory criteria—not on judicial enforcement of the FDCA's substantive requirements. Equally important, *Azurity* reaffirmed that § 337(a) bars claims that would require courts to usurp the FDA's role by deciding compliance questions entrusted to the agency. *Id*. at 500-05. Thus, even in the Lanham Act context, the First Circuit drew the line at claims that would effectively convert private litigation into FDCA enforcement.

As an initial matter, Plaintiff's Complaint crosses that line with respect to its state law claims. Unlike *Pom Wonderful* and *Azurity*, Plaintiff is not invoking a federal statute with its own enforcement scheme. He advances state consumer fraud claims whose elements require a determination that Defendants sold an "unapproved new drug." D.I. 1 ¶¶ 186-188, 221-223. A state law claim may proceed alongside the FDCA only if it parallels federal requirements, without depending on them. *Scanlon v. Medtronic Sofamor Danek USA Inc.*, 61 F. Supp. 3d 403, 411 (D. Del. 2014). There must therefore ***exist*** a state-law corollary allowing the claim to be resolved on state law grounds alone, such that liability would exist even if the FDCA had never been enacted. *Id*. But Plaintiff's state law claims fail that test. His theories of falsity, deception, and illegality all depend on the allegation that oral tirzepatide lacks FDA new drug approval, has not undergone FDA-recognized clinical studies, and Defendants' dispensing does not meet § 503A. Absent the Plaintiff's alleged FDCA deficiencies, Plaintiff has no viable state law theory at all.

The same defect is fatal to Plaintiff's RICO claims. RICO requires a predicate act to sustain its "pattern of racketeering" element, but every predicate act Plaintiff identifies depends entirely on the assertion that Defendants sold an "unapproved new drug" that purportedly does not work *because* it has not gone through FDA approval or clinical trials. *See* D.I. 1 ¶¶ 2, 4, 39, 46-47, 55, 186-88, 221-223. Each alleged predicate offense—whether framed as mail fraud or wire fraud—requires a court to interpret and enforce the FDCA's new drug approval requirements to determine whether Defendants' conduct was unlawful. Because every predicate act is thus rooted in alleged FDCA noncompliance, each is independently barred under § 337(a). Without any viable predicate act, the RICO claim collapses entirely. In other words, the alleged fraudulent act is that oral tirzepatide is ineffective *because* it violates the FDCA. *Id*. Where the alleged predicate acts require a court to determine whether Defendants complied with FDCA, the claims amount to nothing more than an attempt to privately enforce the FDCA. Plaintiff's RICO claim therefore fails for the same reason his state-law claims fail: it relies entirely on FDCA noncompliance masquerading as fraud.

Second, Plaintiff's insistence that the lawful compounding of oral tirzepatide is "irrelevant to these claims and consumer-protection analysis" (D.I. 24 at 12) is simply incorrect. s Section 503A permits the compounding of drugs when a prescriber determines the drug is necessary for a patient even if the drug has a different route of administration (*i.e.*, oral vs. injectable). D.I. 18-1 at 8-9. Plaintiff's theory rests on the opposite premise—that oral tirzepatide is inherently ineffective for its lack of clinical studies and FDA approval and, therefore, categorically unlawful. D.I. 1 ¶¶ 2, 4, 39, 46–47, 55, 186–88, 221–23. Adjudicating that theory would require the Court to determine whether compounded oral tirzepatide prescribed to Plaintiff complied with the FDCA, a task Congress reserved exclusively to FDA. 21 U.S.C. § 337(a).

Third, Plaintiff argues that state consumer protection statutes provide freestanding duties

independent of the FDCA. But Plaintiff's Complaint identifies no such duty. Unlike cases involving concealing known risks, Plaintiff's theory is that the oral tirzepatide is deceptive ***because*** it lacks FDA approval or clinical studies. D.I. 1 ¶¶ 2, 4, 39, 46-47, 55-57, 186-188, 221-223. That is not an independent state law duty; it is attempted FDCA enforcement by another name. And Count VI (common law fraud) confirms the point: Plaintiff expressly invokes state statutes that prohibit the sale of a "new drug" absent FDA premarket approval, using state law as a vehicle to enforce federal classifications, D.I. 1 ¶¶ 211-24—a textbook example of § 337(a) preemption.

Fourth, Plaintiff argues that his claims are independent because purchasers may sue over the sale of an ineffective drug, even absent reliance on a "new drug" theory. That argument mischaracterizes both Plaintiff's own pleading and the cases he cites. D.I. 24 at 14 (citing *Rikos v. P&G*, 799 F.3d 497, 517–18 (6th Cir. 2015) and *In re Neurontin Mktg. & Sales Pracs. Litig.*, No. 04-10739, 2011 WL 3852254 (D. Mass. Aug. 13, 2011)). Unlike the plaintiffs in *Rikos* or *In re Neurontin*, Plaintiff's Complaint does not allege independent scientific evidence demonstrating that oral tirzepatide is ineffective. He pleads no clinical data, testing, or affirmative evidence of pharmacological failure. Instead, the Complaint defines alleged ineffectiveness by reference to oral tirzepatide's FDA approval status—asserting that oral tirzepatide "does not work" ***because*** it lacks new drug approval and clinical studies. D.I. 1 ¶¶ 39, 42, 46–47, 55, 186–88.

That distinction is significant and dispositive. In *Rikos*, the alleged deception turned on product composition and bioavailability ***independent of*** FDA approval requirements, and adjudication of FDCA compliance was unnecessary. 799 F.3d at 517–18. Likewise, in *In re Neurontin*, liability rested on scientific evidence and admissions showing Pfizer promoted FDA-approved Neurontin for off-label uses despite lack of efficacy, without any determination of FDCA compliance. 2011 WL 3852254, *11–26, 34–46. Here, in contrast, Plaintiff pleads no independent

8

scientific evidence of inefficacy; instead, Plaintiff relies solely on articles summarizing the studies Novo and Eli Lilly submitted to FDA as part of required new drug approval process under § 505 of FDCA. D.I. 1 ¶¶ 41-46 nn.80-94. The Complaint defines falsity solely by reference to FDA approval status—asserting that oral tirzepatide does not work ***because*** it lacks FDA new drug approval and clinical studies. D.I. 1 ¶¶ 39, 42, 46–47, 55, 186–88. That theory collapses without the FDCA. Plaintiff's claim "exists solely by virtue of" federal drug-approval law, triggering § 337(a) prohibition on private enforcement. *Buckman*, 531 U.S. at 353.

Fifth, Plaintiff's reliance on *Markoff* is misplaced. *Markoff* involved alleged concealment of known adverse side effects—a traditional state law duty that exists independent of federal approval or labeling requirements. *Markoff v. Athena Cosmetics, Inc.,* 764 F. Supp. 3d 733, 742 (N.D. Ill. 2025). Here, Plaintiff alleges no side effects, no adverse events, and no independent safety risk that Defendants failed to disclose. His theory is not concealment, but lack of FDA approval—precisely the distinction *Markoff* underscores. *Markoff*, 764 F. Supp. 3d at 740–42. Plaintiff also incorrectly attempts to limit *Buckman* to fraud on FDA claims. But *Buckman* articulated the broader principle that claims are impliedly preempted when they "exist solely by virtue of the FDCA" and would require courts to police compliance with federal regulatory schemes. 531 U.S. at 353. Plaintiff's attempt to distinguish *Buckman* (D.I. 24 at 14) therefore collapses as his claims turn entirely on whether Defendants complied with federal new drug approval requirements under the FDCA. *See* D.I. 1 ¶¶ D.I. 1 ¶¶ 39, 42, 46–47, 55, 186–88.

Sixth, *Davidson v. Sprout Foods, Inc.*, is no help to Plaintiff. There, the Ninth Circuit explicitly distinguished *Buckman* because plaintiff sought to enforce independent state-law duties under California's Sherman Law, which expressly incorporates federal food-labeling standards and permits parallel state enforcement in an area of traditional state regulation. *Davidson v. Sprout*

9

*Foods, Inc.*, 106 F.4th 842, 848-50 (9th Cir. 2024). Critically, *Davidson* emphasized that the plaintiffs were not asking the court to enforce the FDCA itself, nor to decide whether Sprout had complied with federal regulatory requirements committed exclusively to FDA. Instead, the plaintiffs alleged violations of state law obligations that were "identical" to federal food labeling standards but enforced as state law, in a different context—food labeling—where Congress expressly permitted parallel state regulation. *Id.* at 849–51. That reasoning does not apply here. Unlike *Davidson*, Plaintiff claims harm **because** Defendants' product allegedly constitutes an "unapproved new drug" under the FDCA and lacks the requisite clinical studies to be an FDA-approved drug. *E.g.,* D.I. 1 ¶¶ 2–4, 39, 46–47, 55–57, 186–88, 221–23.

As *Davidson* recognized, claims are preempted where they "exist solely by virtue of FDCA requirements" and would require a court to determine whether the defendant complied with federal drug laws—precisely the role reserved to FDA. 106 F.4th at 848-49 (discussing *Buckman*). Here, Plaintiff's consumer-fraud and RICO claims all rise or fall on whether oral tirzepatide is an "unapproved new drug," this case falls squarely on the *Buckman* side of the line (not *Davidson*) because Plaintiff's claims depend entirely on judicial enforcement of the FDCA's new drug approval process. This is especially true of Plaintiff's RICO claims, where each alleged predicate act requires a judicial determination of FDCA compliance—an inquiry that is exclusively for the federal government to adjudicate pursuant to § 337(a) regardless of the statutory vehicle through which it is pursued. Thus, *Davidson* actually confirms Defendants' position: where a plaintiff's claim requires a court to determine whether federal drug laws were violated, § 337(a) preemption applies "regardless of the label affixed to the claim." *Id.* at 848–50. Because all of Plaintiff's state-law and RICO claims require such determinations, they should be dismissed.

        3.      <u>Stripped of the FDCA, Plaintiff's Claims Fail for Lack of Plausibility.</u>

The preemption analysis also exposes a separate and independent flaw in Plaintiff's

Complaint: once the FDCA based allegations are removed, nothing plausibly unlawful remains. Even accepting Plaintiff's remaining allegations as true, the Complaint lacks any legally cognizable claim. Plaintiff alleges that he took oral tirzepatide for "more than a week" and "experienced no physiological effects." D.I. 1 ¶ 91. He alleges no side effects. He alleges no adverse health consequences. He identifies no independent state law duty that Defendants breached. And he does not allege that Defendants promised weight-loss results within one week, or at any fixed timeframe at all. The remaining allegations are legally insufficient; a brief, subjective lack of perceived effect after one week of use cannot plausibly establish fraud, consumer deception, or racketeering. *Maio v. Aetna, Inc.*, 221 F.3d 472, 488 (3d Cir. 2000) (RICO injury requires facts showing the product or service received was "actually compromised or diminished").

Indeed, Plaintiff's attempt to plead "scientific certainty" by invoking FDA approval standards only underscores the pleading deficiency: without the FDCA's regulatory framework defining what it means for a drug to be effective, Plaintiff offers no workable standard for fraud at all. Even the studies Plaintiff cites evaluate outcomes over 26, 52, or 78 weeks—not one week. *See e.g.,* D.I. 1 ¶ 44 n.91. The Complaint's theory of fraud does not rest on Plaintiff's experience or any independently deceptive conduct; it rests on the FDCA-derived assertion that oral tirzepatide is an "unapproved" "new drug" and therefore *per se* ineffective. *See* Section A.1, *supra*. Indeed, Plaintiff's assertion that his claims do not depend on a "new drug" theory is flatly contradicted by the Complaint itself, which repeatedly defines fraud by reference to FDA approval status and § 505 compliance. *See* D.I. 1 ¶¶ 2–4, 39, 46–47, 55–57, 186–188, 221–223. Strip that premise away, and all Plaintiff alleges is that he used a lawfully compounded prescription medication for approximately a week, did not perceive immediate effects, stopped taking the medication, and canceled his subscription. D.I 1 90-91. Those allegations do not plausibly state a

11

claim for fraud, consumer deception, or RICO. In short, § 337(a) does not merely bar Plaintiff's claims—it reveals them for what they are. Absent the FDCA's regulatory framework, Plaintiff has pled no plausible theory of falsity, injury, or misconduct at all. Dismissal is required.

**B.**    **Plaintiff Has Failed to Set Out the Required Elements of His RICO Claim.**

1.    Plaintiff Fails to Establish RICO Standing.

a)    *Plaintiff Has Not Established a RICO Injury Because His Claims Depend on A "Lack of Substantiation" Theory.*

As Plaintiff's concedes, a RICO injury cannot be predicated on a "lack of substantiation" theory, *i.e.*, allegations that a drug's "relative effectiveness" has not been "proven through conclusive evidence." D.I. 24 at 19-20; D.I. 18 at 15 (citing *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 06-5774, 2009 WL 2043604, *13 (D.N.J. July 10, 2009)). Attempting to sidestep this rule, Plaintiff asserts that "competent scientific evidence demonstrates that claims made by a defendant are objectively false." D.I. 24 at 19. But that is not what the Complaint alleges.

As Defendants noted, the Northern District of California already disposed of similar lack of substantiation claims in *Eli Lilly & Co. v. Adonis Health, Inc. d/b/a Henry Meds* ("*Henry*"), No. 25-3536, 2025 WL 2721684 (N.D. Cal. Sep. 24, 2025). There, as here, the plaintiff, Lilly, relied on allegations that oral tirzepatide lacked clinical studies proving effectiveness, supplemented by general assertions that "the rate of absorption and bioavailability" that injectables, as opposed to oral drugs, "allow its medicines to enter the bloodstream directly," as well as anecdotal customer complaints.  Compl. (ECF No. 1) ¶ 40, *Henry*, No. 25-3536 (N.D. Cal. Apr. 23, 2025) (**Exhibit A**). *Henry* ruled those allegations insufficient because they rested upon the allegation that the defendant's advertising falsely implied scientific substantiation—*i.e.*, lack of substantiation. *Henry*, 2025 WL 2721684, *7.

The same is true here. Plaintiff cites no studies showing oral tirzepatide is ineffective. Instead, he repeatedly emphasizes the *absence* of proof, asserting that oral tirzepatide "**has yet to be shown**" to achieve bioavailability or therapeutic effect. D.I. 1 ¶ 49 (emphasis added). Adding more reasons why Plaintiff believes the drug **shouldn't** work does not transform a lack of substantiation claim into one pleading actual falsity requirement. Because Plaintiff has not pled facts showing that oral tirzepatide is ineffective, he has not alleged a cognizable RICO injury.

Plaintiff's reliance on *Diebler v. SanMedica Int'l, LLC*, 488 F. Supp. 3d 169, 180 (D.N.J. 2020) misses the mark. There, plaintiff filed suit against the manufacturer of SeroVital, and cited peer-reviewed studies showing the product was no more effective than a placebo. *See* Compl. (ECF No. 1) ¶ 3, *Diebler*, No. 19-20155 (D.N.J. Nov. 13, 2019) (**Exhibit B**). On that basis, the court in *Diebler* found that Plaintiff had adequately alleged that SeroVital was ineffective. But here, Plaintiff points to no studies of oral tirzepatide's supposed ineffectiveness. His theory rests on regulatory and evidentiary absence, not affirmative proof of falsity. That is exactly the type of claim *Henry* rejected. D.I. 1 at ¶ 49.

b)      *Plaintiff Cannot Show Proximate Cause Without Alleging That **Someone** Relied on Defendants' Alleged Misrepresentations*

Plaintiff's Opposition attempts to completely discount the role of reliance to satisfy the proximate cause requirement of RICO.  While, as Plaintiff notes, under *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647-50 (2008), first-party reliance is not a prerequisite to a finding of proximate cause, Plaintiff ignores the Court's subsequent exhortation that "[o]f course, none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that **someone** relied on the defendant's misrepresentations." *Id.* at 658 (emphasis added). Further, *Bridge* noted that "it may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance" to prove causation,

13

and that "the absence of first-party reliance may in some cases tend to show that an injury was not sufficiently direct to satisfy § 1964(c)'s proximate-cause requirement." *Id.* (emphasis added).

None of the cases cited in Plaintiff's Opposition found RICO's proximate cause requirement satisfied without allegations or evidence of either first-party or third-party reliance. In *In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d 21, 39 (1st Cir. 2013), the court's RICO proximate cause finding was predicated on findings that "physicians would base their prescribing decisions in part on Pfizer's fraudulent marketing," which in turn would lead to plaintiff Kaiser reimbursing providers for Neurontin prescriptions. The key link in the causal chain was that doctors (third parties) relied on Pfizer's representations. *Id.* at 37-39. In *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1259 (9th Cir. 2019), after holding that plaintiffs pled first-party reliance, the court also held allegations that a third party relied on the defendants' representations satisfied the requirement to "allege that ***someone*** in the chain of causation relied on Defendants' alleged misrepresentations and omissions." *Id.* at 1260. Similarly, in *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 637 (3d Cir. 2015), the Plaintiff third-party payors ("TPPs") alleged both that prescribing doctors "relied upon [Defendant's] misrepresentations in prescribing Avandia and that the TPPs themselves relied upon those misrepresentations in making formulary decisions."

Here, by arguing that the presence of physicians does not break the causal chain (*see* D.I. 24 at 23-24), Plaintiff admits that his claims are not predicated on allegations of third-party reliance by prescribing physicians like the claims in *Neurontin*, *Painters*, or *Avandia*. Plaintiff contends instead that prescribing is ***part of*** the RICO scheme because oral tirzepatide prescriptions were "routed through clinicians operating pursuant to Defendants' prescribing protocols" with "no meaningful prescriber oversight," and that "the consumer chooses Oral Tirzepatide." D.I. 24 at 23-

14

24. Plaintiff's brief thus argues that Plaintiff is **the only person** in the causal chain between Defendants' alleged conduct and Plaintiff's injury. *Id.* at 24 ("[T]here is no physician intermediary involved here."). Because Plaintiff must allege that **someone** on the causal chain relied on the fraudulent statements, logically, Plaintiff must be alleging that **he personally** relied. But as set out in in Defendants' Motion (D.I. 18 at 28-30), Plaintiff's Complaint entirely fails to so allege. Thus, Plaintiff cannot allege that the alleged RICO scheme was the proximate cause of any injury.

### 2. Plaintiff Has Not Established a RICO Enterprise.

Plaintiff's Opposition doubles down on his defective RICO enterprise allegations.[2]  While Plaintiff conclusorily asserts that the consumer-facing brands (including MEDVi, the company from which Plaintiff actually purchased oral tirzepatide) are "fronts" for Defendants, Plaintiff in his opposition admits that he only alleges shared ownership and operational integration between and among Defendants, **not** between Defendants and MEDVi and the other consumer-facing telehealth companies. D.I. 24 at 25. Plaintiff thus fails to allege that the communications by and among the consumer-facing platforms that actually made the alleged representations are engaged in anything other than ordinary, arms-length commercial relationships with Defendants, precluding a finding of an association-in-fact enterprise. *See* D.I. 18 at 33-34.

### 3. Plaintiff's RICO Conspiracy Claim Fails.

Plaintiff asserts that Defendants "fail to address [the] governing legal standard concerning Plaintiff's RICO conspiracy claim. But the law, and Defendants' position, is clear. If Plaintiff fails (as he has here) to set forth a substantive claim for a RICO violation, then a conspiracy claim predicated on those violations fails. *Lum v. Bank of Am.*, 361 F.3d 217, 227 (3d Cir. 2004); *Dist.*

---

[2] While Plaintiff asserts that Defendants' arguments concerning the deficiencies of his enterprise allegations are "underdeveloped," his brief then spends nearly two pages directly addressing Defendants' arguments.  Plaintiff's claim that Defendants' enterprise arguments were somehow waived by non-assertion thus fails.

*1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 529–30 (D.N.J. 2011).

### C.    Plaintiff's Fraud Allegations Fail to Satisfy Rule 9(b).

#### 1.    Plaintiff's Complaint Failed to Plead Fraud.

For all its bluster, Plaintiff's Opposition does not dispute that Plaintiff fails to attribute a *single* misleading consumer-facing statement to any of the named Defendants in this action. Instead, Plaintiff claims his allegations of a "unified course of fraudulent conduct" suffice where allegations of actual fraudulent misrepresentations by Defendants are lacking. D.I. 24 at 29. This is not the law, and Plaintiff's Opposition freely mixes and matches law covering disparate elements of his claims in an attempt to paint over the fundamental defects of his fraud-based claims.[3]

Although Plaintiff asserts that he adequately alleges "when and how" Plaintiff was exposed to alleged misrepresentations concerning oral tirzepatide (D.I. 24 at 30), he then seeks to belatedly add allegations by relying on an attorney affidavit regarding the customer intake process that Plaintiff supposedly followed in order to purchase his medication. D.I. 24 at 30 (citing Altland Decl. Ex. C)). However, these allegations are not in Plaintiff's Complaint. "Plaintiff may not amend his complaint through his opposition brief, and these new facts may not be considered by the Court in resolving the instant motion to dismiss." *Conaway v. McAfee-Garner*, No. 19-619, 2020 WL 6445895, *2 (D. Del. Nov. 3, 2020) (rejecting references to "facts not contained in the original complaint" and "exhibits that were not included with the original complaint"); *see also Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Plaintiff's actual Complaint *nowhere* alleges which (if any) consumer-facing

---

[3] Because Plaintiff fails to plead his fraud-based claims with specificity, he also fails to allege sufficient predicate acts to establish a pattern of racketeering activity, regardless of Plaintiff's argument that a pattern *can* exist in medication and compounding cases. *See* D.I. 24 at 26-28.

16

representations concerning oral tirzepatide Plaintiff even saw, let alone relied upon, to prior to his purchase. Plaintiff's claim lacks the particularity required by Rule 9(b). D.I. 18 at 29-30.

Further, there is not a single allegation that any of the named Defendants made a single consumer-facing misrepresentation concerning oral tirzepatide. Instead, Plaintiff asserts that his allegations of a "coordinated, backend-controlled enterprise in which consumer-facing 'brands' served as portals into a unified telehealth–pharmacy operation that deceptively sold customers Oral Tirzepatide" are sufficient to establish liability because they "place [Defendants] at the center of the scheme that generated" the alleged false representations. D.I. 24 at 29-30. But Plaintiff ignores that he cannot make out a claim for fraud merely by pleading the existence of a scheme without pleading **who** allegedly made misrepresentations to Plaintiff. *See Lum*, 361 F.3d at 223-24.

Plaintiff misconstrues Defendant's arguments, claiming that Defendants are requiring Plaintiff to meet the high standard of "identify[ing] a specific OpenLoop employee who authored particular website language." But Plaintiff failed to identify **any** fraudulent statement made by **any** named Defendant. This case is thus a far cry from *Caldiero v. Missouri Higher Educ. Loan Auth.*, No. 24-0315, 2025 WL 979002, *4 (M.D. Pa. Mar. 31, 2025). There, although the plaintiff "fail[ed] to allege the name or job title of the employee at [Defendants] who allegedly made the misrepresentations," she did allege the substance of misrepresentations made *by the named defendants*. Similarly, in *Prudential Ins. Co. of Am. v. Credit Suisse Sec. (USA) LLC*, No. 12-7242, 2013 WL 5467093, *22 (D.N.J. Sept. 30, 2013), while the court noted that "the description of each defendant's role in the securitization process and the identification of each offering with which each defendant was involved" was sufficient to assert a predicate act under NJ RICO, there was no dispute in that case that specific named defendants **actually made** alleged misrepresentations to plaintiffs. *Id.* *2-3 (describing Defendants' alleged roles in "writing the offering materials"

17

Plaintiff relied on). But here, Plaintiff alleges that the consumer-facing misrepresentations were hosted on websites operated by brands—which Plaintiff itself alleges were owned by legal entities (that Plaintiff chose not to sue) and are *separate and distinct* from Defendants.  D.I. 1 ¶¶ 19-32.

Plaintiff attempts to skirt the basic requirements for pleading claims based on consumer fraud by arguing that the cases cited by Defendants "arise from bilateral contract disputes or product-liability pleadings in which plaintiffs failed to identify a speaker in a discrete transaction." D.I. 24 at 32. But Plaintiff's claim directly concerns a "bilateral" agreement between Plaintiff and MEDVi to purchase oral tirzepatide, not an agreement between Plaintiff and any of the named Defendants. That Plaintiff chose to bring a RICO claim in addition to its common law fraud and state consumer protection claims does not excuse Plaintiff from alleging fraud with particularity, including to support his fraud-based RICO claims.

Plaintiff has not claimed that any of Defendants made misstatements to Plaintiff or other consumers. Rather, he alleges only that "Defendants supplied the infrastructure, content frameworks, and operational backbone for consumer-facing brands/websites" (D.I. 24 at 32), which is not in any sense unlawful, and that the claims on the consumer-facing websites are "caused by and dependent upon OpenLoop's prescribed backend infrastructure" (*Id.* at 34), without explaining or identifying any facts at all that support this purported causal connection. Plaintiff insists "[t]he Complaint pleads OpenLoop's own statements describing its role in supplying and operating the essential elements of the scheme," and that means that "attributing the representations to Defendants is not impermissible group pleading." D.I. 24 at 31. But Plaintiff does not address this fundamental defect—nowhere does he actually make a *single* non-conclusory allegation that OpenLoop or the other Defendants actually supplied or controlled the wording or content of the consumer-facing representations made by MEDvi. Plaintiffs' allegations of a

18

"scheme" or Defendants' alleged "role" in one do not relieve Plaintiff of his obligation to plead plausible facts regarding "who made a misrepresentation to whom." *Lum*, 361 F.3d at 224.

Recognizing the deficiency of its claims based on representations made on the consumer-facing website, Plaintiff's brief points to the mere fact that OpenLoop processed Plaintiff's payment for oral tirzepatide as a purported predicate act of wire fraud. D.I. 24 at 30. But Plaintiff's ***Complaint*** nowhere identifies this payment processing and receipt as a predicate act of wire fraud. Plaintiff now claims that the receipt provided to Plaintiff was fraudulent because it "falsely identified MEDVi as the billing entity." *Id.* But Plaintiff's allegation in the Complaint is merely that the invoice "bore MEDVi's name and logo, but listed OpenLoop's headquarters as the billing address." (D.I. 1 ¶ 88.) Plaintiff does not explain how the mere fact that a payment may have been routed through OpenLoop's payment infrastructure in itself was false or misleading, or, for that matter, how a ***post-purchase*** invoice and receipt can possibly have induced Plaintiff's purchase.[4]

Plaintiff made the conscious choice to plead the Complaint's fraud-based claims amorphously and without attributing the source of the statements Plaintiff allegedly was exposed to—presumably to downplay the role of MEDVi to try to avoid the application of Plaintiff's arbitration agreement (Section III.F *infra*). Having chosen to assert deficient allegations, Plaintiff cannot now claim that he is excused from Rule 9(b)'s standards because he constructed allegations of an overarching "scheme." Rule 9(b) demands more, and all of Plaintiff's fraud-based claims must be dismissed for failure to allege ***who*** among Defendants made the representations.

2.   Plaintiff Fails to Allege the Falsity of Specific Statements at Issue.

Undeterred by the fundamental failings of his lack of substantiation theory, Plaintiff argues

---

[4] Plaintiff also appears to allege that Triad filling the prescription is "at minimum, aiding and abetting fraud," (D.I. 24 at 30), but Plaintiff cites no case law and does not explain how the mere act of filling a prescription is aiding and abetting, without alleging that Defendants had a role in the making of the allegedly fraudulent representations.

that certain allegations in the Complaint show actual falsity. But Plaintiff mischaracterizes these statements or raises "falsity" that really only rehash his failed lack of substantiation theory. First, Plaintiff generically assets that "Plaintiff's efficacy claims rest on a scientific reality that Defendants do not credibly dispute." D.I. 24 at 33. But this merely restates Plaintiffs' failed lack of substantiation claims. Further, Plaintiff's conclusory assertion that oral tirzepatide cannot be effective is not a *fact* that this court can or should credit, and it cannot make up for Plaintiff's failure to plead any actual facts demonstrating that oral tirzepatide is *ineffective*.

Second, Plaintiff argues that his allegations of statements concerning "concrete, verifiable representations about therapeutic equivalence, clinical efficacy," D.I. 24 at 33, suffice to establish falsity. But Plaintiff mischaracterizes his own allegations. For instance, Plaintiff cites to his allegations that consumer-facing websites (including MEDVi) merely display oral tirzepatide next to images of injectable GLP-1 medications. But this is hardly a "concrete, verifiable representation[]" about therapeutic equivalence. Indeed, *Henry* dismissed similar claims based on statements comparing that defendant's oral drug and Lilly's injectables. *Henry*, 2025 WL 2721684, *3. The remaining allegations concerned purported weight loss results for patients taking oral GLP-1s. But these types of statements are the exact type the *Henry* court found unsubstantiated, not provably false. *Id.* *7 (dismissing claims based on statement that "many Henry Meds patients lose around 5% of their initial body weight. Over 12 weeks, it can be as high as 10%.").

Third, Plaintiff claims that "consumers saw repeated messaging" about doctor involvement. D.I. 24 at 34. But the Complaint does not plausibly allege that the prescribing process *lacked* doctor involvement. Instead, Plaintiff's own experience is merely reflective of an asynchronous telehealth model, where physicians review patient medical information without the necessity of a pre-prescription consultation. D.I. 18 at 4. And, if Plaintiff's fraud claims are

predicated on statements about physician involvement, Plaintiff has failed to allege that these statements could have caused him to purchase oral tirzepatide; he alleges he was aware he had not synchronously engaged with a physician before the drug was prescribed. *See* D.I. 1 at ¶¶ 85-86.

Fourth, Plaintiff attacks Defendants' arguments that many of the alleged statements on the consumer-facing websites were either true or mere puffery.  D.I. 24 at 35. But Plaintiff's only argument is that these statements "are necessarily false or misleading because, as alleged, Defendants' product is snake oil." D.I. 24 at 35.  This just repackages Plaintiff's lack of substantiation arguments, which (as explained in Section II(B)(1)(a), *supra*) cannot support his fraud-based claims.  In a last-ditch attempt, Plaintiff argues that "liability does not depend on reliance on a particular misrepresentation, or the truth or falsity thereof, where the scheme itself is fraudulent."  D.I. 24 at 35. But alleging a fraudulent scheme requires alleging the existence of *some* fraudulent statement; in light of his failed lack of substantiation theory, Plaintiff cannot point to any. Even if Plaintiff were correct that proving a RICO fraudulent scheme did not require showing actual false statements (he is not), this would still not establish liability on Plaintiff's common law fraud and consumer protection claims. Accordingly, Plaintiff fails to plead falsity with the particularity 9(b) requires, and his RICO, common law fraud, and state consumer protection claims all fail.

### D.    Plaintiffs' Opposition Fails to Address the State Law Claims' Deficiencies.

#### 1.    Rule 23 Does Not Override the State Class Action Bars at Issue.

Plaintiff acknowledges that courts in this Circuit have consistently applied the class-action bars in the South Carolina and Tennessee consumer protection acts to dismiss putative class actions brought under these statutes. Instead of reckoning with this authority, Plaintiff argues that the Supreme Court's recent decision in *Berk v. Choy*, 607 U.S. __, 146 S. Ct 546 (2026) overrules these authorities. D.I. 24 at 40. Plaintiff's argument is unconvincing. *Berk* does not address the

21

applicability of state limitations on class actions in state court. Courts in this Circuit that have analyzed the relevant South Carolina and Tennessee limitations on class actions have found that applying Rule 23 to override these substantive limitations would "abridge, modify or enlarge a substantive right" in violation of the Rules Enabling Act. *See* 28 U.S.C. § 2072. Neither *Berk*, nor the plurality opinion in *Shady Grove* which Plaintiff claims *Berk* adopts, addressed the interaction between Rule 23 and a state law class action limitation contained within a substantive state statute. Thus, these decisions do not overrule the significant body of law within this circuit applying the South Carolina and Tennessee class action bars in federal court. *See* D.I. 18 at 36-37 n.30.

2.     Plaintiff Cannot Establish Standing in States Where He Suffered No Injury.

Plaintiff asserts that "whether Plaintiff may assert claims under the statutes governing the Multistate Consumer Protection Subclass is a Rule 23 question, not an Article III defect" and "questions concerning a named plaintiff's ability to pursue claims under the laws of additional states are addressed at the class certification stage." D.I. 24 at 40. Plaintiff ignores the numerous cases in this circuit which have concluded the opposite—"named plaintiffs bringing state-law claims from States that they do not reside in or have suffered no injury in presents an injury in fact problem." *Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 149 (D.N.J. 2025). While certain courts under circumstances not applicable here have deferred standing issues until class certification, there is no compelling reason to do so here. *Id.* at 150 ("Why should defendants— and an overburdened Court—be dragged into protracted nationwide discovery for a class certification that may never come?"). This is especially true here because only a single named plaintiff purports to bring claims under the laws of 13 additional states, with no indication of any class representatives waiting in the wings from other states. D.I. 18 at 34-35.

E.     **Plaintiff Has Failed to Establish Standing for Injunctive Relief.**

Plaintiff's attempts to distinguish the cases that clearly foreclose Article III standing are

22

unavailing. He asserts that Defendants' cases "involved plaintiffs who failed to establish *any* concrete injury," and he seeks to halt Defendants' continued "distribution of Defendants' fraudulent weight-loss pill." D.I. 24 at 41. But Plaintiff misapprehends Article III standing. The mere fact that injunctive relief is available under RICO and North Carolina UDTPA is irrelevant: a plaintiff cannot satisfy injury-in-fact simply because a statute authorizes suit. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek …." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Thus, to pursue injunctive relief, Plaintiff (*not* the class he purports to represent) must make a *separate* showing that he "is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012).[5] Given Plaintiff's allegations, he cannot plead any risk of "actual and imminent" future injury to himself. The argument that injunctive relief is appropriate because absent one Defendants will "continue their misconduct" is not relevant if that "misconduct" poses no threat to Plaintiff.[6] Accordingly, Plaintiff's claims for injunctive relief are the "sort of '"stop me before I buy again" claim' the Third Circuit has rejected," *Serrano*, 773 F. Supp. 3d at 155, and must be dismissed.

F.    **Plaintiff Cannot Evade the Arbitration Clause and Class Action Waiver.**

Alternatively, Defendants seek to compel arbitration. North Carolina law, where Plaintiff

---

[5] That Defendants cited cases where plaintiffs also lacked monetary relief standing is irrelevant; courts in this Circuit routinely dismiss injunctive relief claims for a lack of standing while upholding standing on other claims. *Bloomsybox.com, LLC v. Userway, Inc.*, No. 24-844, 2026 WL 412716, *4 (D. Del. Feb. 13, 2026), *R. & R. adopted*, No. 24-844, 2026 WL 585189 (D. Del. Mar. 2, 2026); *Twardzik v. HP Inc.*, No. 21-396, 2022 WL 606092, *2 (D. Del. Jan. 25, 2022), *aff'd*, No. 22-2650, 2023 WL 5770999 (3d Cir. Sept. 7, 2023); *Serrano*, 773 F. Supp. 3d at 155.

[6] "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338, n. 6). Plaintiff does not allege any risk of ongoing harm *to him*. *Carson v. HP Inc.*, 750 F. Supp. 3d 376, 388 (D. Del. 2024) (plaintiff lacked standing for injunctive relief where alleged only "other unknowing potential customers could suffer this fate").

resides, strongly favors arbitration. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001) (North Carolina strongly favors arbitration) (citing *Johnston County, N.C. v. R.N. Rouse & Co.*, 414 S.E.2d 30, 32 (N.C. 1992)). Delaware does too. *See, e.g.*, *SBC Interactive v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998). Any doubts about the existence of an arbitration agreement are resolved in favor of arbitration. *Hightower*, 272 F.3d at 242.

Plaintiff's Complaint is premised on a transaction with MEDVi. D.I. 1 ¶¶ 82-92. While Plaintiff's Complaint theorizes that OpenLoop operates a "scheme" or "enterprise" involving MEDVi, among others, *id.* ¶¶ 6, 138, 144, Plaintiff acknowledges that MEDVi is not, in fact, OpenLoop. *Id.* ¶ 20; D.I. 24 at 25. Plaintiff's Complaint is centered on Plaintiff's personal experience with MEDVi. D.I. 1 ¶ 82-92. His Complaint alleges that MEDVi was an Open Loop "front"; identifies MEDVi more than 50 times; uses the terms "scheme" and "enterprise" more than 50 times; appends 30 pages of MEDVi ads; and includes MEDVi as an essential element of the purported "enterprise." D.I. 1 ¶ 144. Yet he did not sue MEDVi—likely because of this clause.

Plaintiff's allegations against Defendants are substantially intertwined with his MEDVi experience.[7] Under either Delaware or North Carolina (or almost any state's law), the test is essentially the same: where a plaintiff's complaint involves substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to an agreement, equitable estoppel is warranted.[8] Inherent in any assertion of equitable estoppel that

---

[7] *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-417 (4th Cir. 2000) (non-signatory can enforce arbitration clause executed by others); *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. 2037-N, 2006 WL 2473665, *5 (Del. Ch. Aug. 22, 2006) (same).

[8] *Wilcox*, 2006 WL 2473664, *5 (applying equitable estoppel as plaintiff's complaint alleged concerted misconduct by non-signatory and signatory) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005) (equitable estoppel warranted when the claims are "substantially interdependent" and involve alleged "concerted misconduct") (cleaned up) (also citing *MS Dealer*).

the asserting party is—by definition—not a party to the agreement. The whole basis for equitable estoppel rests on the fact that a ***non-party*** to the agreement—Defendants—are seeking to estop a party to that agreement—Plaintiff—from disclaiming that agreement's provisions apply, when they are intertwined with Plaintiff's claims.

As strangers to the agreement, Defendants could not possibly possess information about its formation, other than information that is publicly available (such as MEDVi's publicly available website Terms and Conditions).  D.I. 19-1 (Ex. D). Plaintiff's complaint that Defendants "attach no evidence" (D.I. 24 at 43) in support of the agreement's enforceability and that "Defendants' time to offer evidence in support of their motion … has passed" (*id.* at 45) misses the point of equitable estoppel. To require non-parties, like Defendants, to submit evidence about a contract— to which they are (by definition) not parties—would effectively eliminate equitable estoppel.

While Plaintiff's ***lawyers*** assert that he did not understand that by submitting to MEDVi's eligibility check, he was assenting to MEDVi's terms (D.I. 24 at 47; Ex. B Fig. 33), his lawyer's "testimony" is not evidence; ***discovery*** into Plaintiff's and MEDVi's understanding of the process (as opposed to his lawyer's affidavit) is needed. If the Court is not inclined to dismiss now, it should set a limited period for jurisdictional discovery on the enforceability of the arbitration agreement and class action waiver, to include issuance of a subpoena to third-party MEDVi and a deposition of Plaintiff. *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024) (consumer class action case clarifying that fact discovery will "often" be needed in motions to compel arbitration). Ordering this case to be arbitrated on a single plaintiff non-class basis is appropriate; alternatively this Court should order limited jurisdictional discovery.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Class Action Complaint should be dismissed in its entirety.

25

Dated: April 23, 2026

Respectfully submitted,

**BLANK ROME LLP**

*/s/ James G. Gorman III*
James G. Gorman III (#6284)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
Telephone: 302-425-6400
Facsimile: 302-425-6464
james.gorman@blankrome.com

Shannon E. McClure (*pro hac vice*)
One Logan Square, 130 N. 18th Street
Philadelphia, Pennsylvania 19103
Telephone: 215-569-5500
Facsimile: 215-569-5555
shannon.mcclure@blankrome.com

Rachael G. Pontikes (*pro hac vice*)
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone: 312-776-2600
Facsimile: 312-776-2601
rachael.pontikes@blankrome.com
*Attorneys for Defendants*